No. 11,836.

| 98 | 573 |
|-----|-----|
| 140 | 307 |

## LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. SHANKLIN.

RAILROADS.—*Fences.*—*Abandoned Highways.*—*Animals, etc.*—Where the evidence shows that the county commissioners gave permission to a railroad company to occupy a highway, and it has done so for thirty years, the cuts and fills, at some places covering the entire way; and during that time the public authorities have exercised no supervision over the way, and the public have not usually travelled over it, the jury are justified in finding that the highway, as such, has been abandoned, and that the company should maintain fences.

SAME.—*Instructions.*—An instruction, that if the company can fence its road, without interfering with the rights of the public or the management of its road, it is bound to do so, is not erroneous, as against the company.

SAME.—The court can not be asked to cover the whole case in a single instruction.

SAME.—Instructions should be considered as a whole.

PLEADING.—*Uncertainty.*—*Demurrer.*—Indefiniteness in a pleading is reached by a motion, but not by a demurrer for want of facts.

From the Montgomery Circuit Court.

*A. D. Thomas*, for appellant.

*G. W. Paul* and *J. E. Humphries*, for appellee.

ZOLLARS, C. J.—The evidence tends to show the following facts: About thirty-five years ago, a certain public highway leading from Crawfordsville to Lafayette was graded for a macadamized road. In 1849, after the grading had been partially or wholly completed, the Crawfordsville and Lafayette Railroad Company, upon application to the board of county commissioners of Montgomery county, was granted permission to occupy that portion of the highway which was in Montgomery county as a right of way for its railroad track. Soon after, the railroad was built, and from that time

to this, the railroad company, and its successor, the appellant, have occupied the highway for the uses and purposes of a railroad.  A portion of the highway, two miles and more in length, so occupied, extends from the town of Linden to what is known as Murphy's crossing.  About a quarter of a mile south of Linden the railroad is crossed by a public highway.  At this crossing the railroad company, for at least twenty years, has maintained a cattle pit and wing fences, leading from the track to fences on either side of the railroad.  During that time there has been a gate in the wing fence on the west side of the track, through which persons and teams might pass to and from the grounds of the old highway and railroad.

Many years ago the adjoining farm owners built fences on either side of the strips of land so occupied by the railroad, and have since maintained them.  Some of these fences seem to have been built before, and some subsequent to, the construction of the railroad.  Whether these fences have been maintained generally, upon the line of the old highway, is not made certain by the evidence.  It is made reasonably certain, however, that at some points, they could not be upon that line.  Notwithstanding the occupancy by the railroad company, and the gate above mentioned, during all the time since the construction of the railroad, people have occasionally passed through the gate, and from that point to Murphy's crossing, between the fences so maintained by the farmers.  Between these points there is and has been a beaten way, parallel with, and partially on either side of, the railroad.  Over this way it is difficult to pass with wagons and other vehicles, and impossible in wet seasons.  At some points the cuts and fills of the railroad occupy and have occupied the whole of the old highway.  At these points the travelled way, above mentioned, of necessity is and has been outside the boundaries of the old highway, and hence at these points the farm fences, which are farther from the railroad than the

travelled way, necessarily are, and have been, outside the boundaries of the old highway.

The evidence tends very strongly to show that at other points the fences are and have been outside the limit of the old highway, as at the gate and for some distance south of it. These fences have been moved several times. There has been nothing like a general use of this way by the public.

It has been, rather, occasional. The farmers living upon the way between these points have not used it generally in marketing the products of their farms. There is no evidence that the public authorities have exercised any supervision at all over it, by work or otherwise.

The order of the board of commissioners gave full authority to the railroad company to occupy the whole of the old highway, if it chose to do so. For more than thirty years the company has occupied the highway, at some points the fills and cuts covering the whole of it. In that occupancy the people and the authorities have acquiesced, in no case, so far as shown by the evidence, disputing the right or undertaking to exercise the supervision or authority given by law over public highways.

Upon the evidence, a synopsis of which we have given, the jury were justified in finding that the highway thus occupied by the railroad company had been abandoned as a highway, and that the railroad might have been fenced. We can not, therefore, reverse the judgment upon the weight of the evidence. *Jeffersonville, etc., R. R. Co.* v. *O'Connor*, 37 Ind. 95.

The facts of this case, as presented in the record, are, in every essential particular, the same as in the cases of *Louisville, etc., R. W. Co.* v. *White*, 94 Ind. 257, *Louisville, etc., R. W. Co.* v. *Shanklin*, 94 Ind. 297, and *Louisville, etc., R. W. Co.* v. *Pixley*, 94 Ind. 603, where it was held that the juries were justified in finding that the old highway had been abandoned, and that the company is bound to maintain fences.

This case, on the contrary, is not the same as the cases of *Louisville, etc., R. W. Co.* v. *Francis*, 58 Ind. 389, and *Louis-*

*ville, etc., R. W. Co.* v. *Wysong,* 58 Ind. 597, and the case of *Croy* v. *Louisville, etc., R. W. Co.,* 97 Ind. 126, in which cases it was held that the evidence failed to show an abandonment of the old highway.

It is said in argument that those cases involved the locality involved here. Conceding this, a fact we can not determine from reading those cases, the evidence is not the same. It is our duty, of course, to rule upon each case as it comes before us. These rulings do not involve a contradiction, for the reason that each case was correctly ruled upon the facts in the record.

Appellee's horse entered through the gate, which, much of the time, has been left open, and having passed down the track for about a quarter of a mile, was there killed by one of appellant's trains.

It is argued that the second and eighth instructions were erroneous, in that they related to the law and rules to govern the jury in determining as to whether or not there had been an abandonment of the highway, there being no evidence to show such an abandonment. In holding that there is evidence tending to show such abandonment, we have disposed of this argument. See *Louisville, etc., R. W. Co.* v. *Shanklin, supra.*

In the third and fourth instructions the court charged the jury that if the company could fence its road without interfering with the rights of the public or the management of its road, it was bound to do so.

The objection urged against these instructions is, that they involve an implication that the company might fence in a public highway. This is not well taken.

In other instructions, the question as to whether or not there was a public highway where the horse entered upon the grounds and track and was injured, was left to the jury to decide; and in an instruction asked by appellant, and given by the court, the jury were charged that if there was such highway, the company was not bound to fence.

The sixth instruction given by the court is a general instruction that railroad companies are liable for the killing of animals if they enter upon the track and are killed at a point where the company might, but have neglected to fence.

It is contended by appellant's counsel that this instruction ignored the defence that there was a public highway at the point where appellee's horse entered and was killed. This instruction does not cover the whole case, as no one instruction could well do. It must be considered with the other instructions, in which the jury were very fully and fairly instructed upon every branch of the case.

Appellant submitted thirteen instructions, all of which were given except one. A large number of these were very favorable to appellant.

It is argued that the complaint is not good, because it is not made certain by the averments at what time the road was not fenced, and that hence the demurrer for want of facts should have been sustained. In the first place, such a defect would not be reached by the demurrer. *Louisville, etc., R. W. Co.* v. *Shanklin, supra.* In the second place, the complaint is sufficiently certain. It is averred that on the 10th day of August, 1882, the horse went upon the track and was killed, and that at the place where it got upon the track and was killed, the road was not fenced. This clearly fixes the lack of a fence at the time of the entry.

Judgment affirmed, with costs.

