Walker v. The State.

The judgment is affirmed, with costs.

Filed June 17, 1885; petition for a rehearing overruled Sept. 17, 1885.

<hr>

No. 12,297.

## WALKER v. THE STATE.

CRIMINAL LAW.—*Competency of Juror.*—*Opinion as to Guilt or Innocence.*— *Conversations with Witnesses.*—An opinion formed from conversations with "witnesses of the transaction" absolutely disqualifies a person from serving as a juror in a criminal cause, but this disqualification applies only to opinions formed from conversations with witnesses to the transaction constituting the *gravamen* of the offence charged, and not to opinions based upon conversations with witnesses to some merely incidental or collateral matter connected with the trial.

SAME.—*Discretion of Trial Court.*—The judge who presides at the trial should be permitted to exercise a large discretion in determining the weight and relative importance which should be given to the answers of a juror to questions touching his qualifications to serve.

SAME.—*Evidence.*—*Family Relations of Deceased, etc.*—*Presumption.*—Where, in a prosecution for murder, a witness testifies to his relationship with the deceased, and also to the family relations and business of the latter, it will be presumed by the Supreme Court, in the absence from the record of the evidence in connection with which such proof was made, that the testimony was properly admitted.

SAME.—*Previous Moral Character of Defendant.*—In a prosecution for murder, evidence that the previous character of the defendant for peace and quietude was good is admissible, but his previous moral character is not a proper subject of inquiry.

SAME.—*Difficulty between Deceased and Third Person.*—Evidence that a third

person, a short time previous to the homicide, had a difficulty with the deceased, and asked the defendant for his revolver to use upon him, which defendant refused, was properly excluded.

SAME.—*Immaterial Evidence.*—*Practice.*—Where offered evidence seems from the record to have been immaterial, it will be presumed that the trial court properly excluded it.

SAME.—*Insanity.*—*Can not be Proved by Reputation.*—Insanity is a fact which can not be proved by reputation.

SAME.—*Partial Insanity.*—*Instructions.*—For instructions on the subject of partial insanity see opinion.

SAME.—*Instructions, How Considered.*—*Practice.*—An instruction must be considered as a whole and not in its separate parts, and also in connection with all the other instructions, if any, given at the same time.

SAME.—*Refusing Instructions Asked.*—It is not error to refuse to give instructions asked when those given by the court sufficiently cover the subject.

SAME.—*Where Cause is on Trial and Undisposed of at End of Term Court May Sit Beyond Term.*—Under section 325, R. S. 1843, continued in force as section 1379, R. S. 1881, where a cause is on trial and undisposed of at the end of a regular term of court, the court may continue its sitting beyond such term until the cause is fully disposed of.

SAME.—*Adjournment Before Midnight.*—*Practice.*—Where at six o'clock on Saturday evening, the last day of a term of court, it is made to appear that the cause can not be disposed of in the six hours remaining of such term, it may be adjourned over until the following Monday, without holding until midnight.

SAME.—*Imperfect Record.*—*Amendment Nunc Pro Tunc.*—The power to amend imperfect records of past proceedings extends to criminal as well as to civil proceedings.

SAME.—*Appeal.*—*Practice.*—Where, after appeal, the record is found to be imperfect, and proceedings are begun in the trial court for its amendment *nunc pro tunc*, there must be an appeal from the order making the amendment to bring in review the sufficiency of the evidence to sustain it.

SAME.—*Notice to Defendant in Prison.*—Notice to a defendant while in prison, on conviction of manslaughter, of proceedings by the State to obtain a *nunc pro tunc* entry amending the record, is, from the necessity of the case, sufficient.

From the Wells Circuit Court.

*J. S. Dailey, L. Mock, J. R. Coffroth* and *T. A. Stuart*, for appellant.

*F. T. Hord*, Attorney General, *E. C. Vaughn*, Prosecuting Attorney, and *W. B. Hord*, for the State.

NIBLACK, J.—This was a prosecution against William Walker, the appellant, for the murder of George Shaw. The indictment charged murder in the first degree. A jury found the appellant guilty of voluntary manslaughter, and fixed his punishment at imprisonment in the State's prison for twenty-one years. After overruling motions for a new trial and in arrest of judgment, the circuit court caused judgment to be entered upon the verdict.

Many alleged errors in the proceedings below are relied upon here for a reversal of the judgment thus entered upon the verdict.

One John Newhouse, being called as a juror, was examined upon his oath touching his qualifications to serve in that capacity. In response to questions addressed to him by counsel, he stated that he had heard of the charge made against the appellant, and knew what it was; that he had both formed and expressed an opinion concerning the guilt or innocence of the appellant; that this opinion was formed from newspaper reports, from common talk in the neighborhood, and from talking with witnesses, but not with eye-witnesses to the transaction; that the opinion he had formed had made a deep impression on his mind; that the impression thus made might have some influence upon him in making up a verdict; that he thought it probably would; that he supposed it would require more evidence in some respects, and less in others, to influence his judgment, than it would if he had formed no opinion concerning the case. Counsel for the appellant then challenged Newhouse for cause, whereupon the court inquired of him whether, notwithstanding the opinion he had formed, he could hear the evidence which might be offered, and render a fair and impartial verdict in the cause according to the law and the evidence, to which he answered promptly in the affirmative. The court, accepting this answer as sufficient, held that Newhouse was a competent juror, and permitted him to be sworn and to serve as such at the trial of the cause.

It is argued that inasmuch as Newhouse had talked with witnesses in the cause, the objection to his competency was much stronger than any of the objections made to certain jurors in the case of *Stout.* v. *State*, 90 Ind. 1, and that he was thereby rendered absolutely incompetent to serve as a juror in the cause.

It is true, that an opinion formed from conversations with "witnesses of the *transaction*" does absolutely disqualify a person from serving as a juror in a criminal cause. This is the fair inference from the peculiar provisions of section 1793, R. S. 1881, and from our holding in the case of *Dugle* v. *State*, 100 Ind. 259. But this peremptory disqualification applies only to opinions formed from conversations with witnesses to ' the transaction constituting the *gravamen* of the offence charged, and not to opinions based upon conversations with witnesses to some merely incidental or collateral matter connected with the trial. Although Newhouse seems not to have been specifically interrogated on the subject, we infer from what he did say that the witnesses with whom he had held conversations were not "witnesses of the transaction" within the meaning of section 1793 of the statutes above referred to. While, therefore, the answers of Newhouse carried him very closely up to the line of peremptory disqualification, a margin was nevertheless left for the exercise of a judicial discretion, and nothing is shown which would justify the conclusion that admitting him to serve as a juror was an abuse of the discretion with which the court was, under the circumstances, invested. *Butler* v. *State*, 97 Ind. 378.

Persons called to serve as jurors are often confused by the incisive and inquisitorial nature of the questions addressed to them touching their qualifications to act in that capacity, and, under a confusion thus induced, frequently give inconsistent, and even incoherent, answers. It is, consequently, both just and reasonable that the judge who presides at the trial should be permitted to exercise a large discretion in deter-

mining the weight and relative importance which should be given to such answers.

The State was permitted to prove at the trial that one Henry Barchman was a brother-in-law of George Shaw, the deceased; that the deceased had a wife and two children, who then lived in Missouri; also, the business in which the deceased was engaged. It is contended that the admission of this evidence was injurious to the appellant, as its tendency was to arouse a sympathy in the minds of the jury in favor of the family of the deceased.

The evidence is not all in the record. We have only such parts of the evidence before us as are supposed to have some bearing upon certain questions reserved at the trial, and as are contained in special bills of exceptions. There is nothing in the record which fully explains Barchman's relation to the cause, but we infer that he was a witness either for the State or the appellant. Assuming that he was a witness at the trial, his relationship to the deceased, or his family, may have become a proper, if not a material inquiry. So, too, in determining the motives by which a party was presumably governed, as well as in making an intelligent application of all the evidence, it often becomes important to know his occupation, his place of residence, his family relations, if any, and his general surroundings. *Bersch* v. *State*, 13 Ind. 434; *Fahnestock* v. *State*, 23 Ind. 231. In the absence, therefore, of the evidence, in connection with which the foregoing proof was made, a presumption in favor of the proper admissibility of such proof will be indulged by this court.

The appellant called witnesses to prove that his general *moral* character was good previous to the alleged homicide, but he was not allowed to introduce evidence on that subject, and that ruling is also complained of here.

Evidence that the previous character of the appellant for peace and quietude was good would have been admissible, but the previous moral character of the appellant was not a proper subject of inquiry in a case like this. That was settled by

the case of *State* v. *Bloom*, 68 Ind. 54 (34 Am. R. 247), and the rule there asserted has not been changed by the subsequent. legislation permitting the general moral character of a witness in a criminal cause to be inquired into. See, also, Whart. Crim. Ev., section 60.

The appellant also offered to prove by one Milliken, that he, Milliken, had a difficulty with the deceased a short time before the homicide, and that he thereupon appealed to the appellant for the loan of his revolver to use upon the deceased; that the appellant declined to loan his revolver to Milliken, and that proof was also excluded. No argument is offered as to the relevancy of the proof thus proposed, and we know of no ground upon which its admissibility could be maintained.

The appellant proposed to prove by his father, Alexander Walker, that it was commonly reputed in the family that his, the witness's, grandfather, and one of his uncles, were insane, but the court held that such proof was inadmissible, and a question was reserved upon the exclusion of that evidence.

Evidence of the kind proposed as above was held to be admissible by the case of *State* v. *Windsor*, 5 Harrington, 512, and that case is quoted from and cited approvingly by Rogers on Expert Testimony at section 60, but we regard the decided weight of authority as against its admissibility.

In the case of *State* v. *Hoyt*, 47 Conn. 518, it is announced, without reservation, that insanity is a fact which can not be proved by reputation; and to the same effect see *Ashcraft* v. *DeArmond*, 44 Iowa, 229, *Foster* v. *Brooks*, 6 Ga. 287, *Choice* v. *State*, 31 Ga. 424. See, also, 2 Greenl. Ev., section 371, and *Baxter* v. *Abbott*, 7 Gray, 71.

In rebuttal one Purseley testified on behalf of the State, that he was at the appellant's house on the evening after the homicide, when the appellant returned home; that the appellant, finding his wife crying, rallied her for her weakness, and said, " You know they have been running over me, and I can't stand it," to which she replied " I know it." The ap-

pellant, in rebuttal on his part, called witnesses, who claimed to have been at the appellant's house at the time referred to, and offered to prove by them that no such conversation as that testified to by Purseley occurred between the appellant and his wife at that time, but the court would not permit the proposed proof to be made, and that decision is here complained of as erroneous.

The alleged conversation between the appellant and his wife was put in evidence as an event happening after the homicide, and there is nothing in the record indicating what was intended to be rebutted by proving that such a conversation took place.   There is, consequently, nothing before us showing, or tending to show, that the conversation in question had any material application to anything which had preceded its introduction in evidence, or was in any way material to the merits of the prosecution against the appellant.   It may have been on account of its immateriality that the court refused to hear further rebutting evidence, and in that respect all the presumptions go in favor of the correctness of the ruling of the circuit court.

As a part of an elaborate series of instructions, the circuit court instructed the jury as follows:

"No. 21. As I have said, every person is presumed to be of sound mind. This presumption remains until the contrary appears, or at least until a reasonable doubt thereof arises from the evidence in the case.

"No. 22. Only persons of sound mind in law can be convicted of crime.   The statute of Indiana provides that the phrase ' of unsound mind' shall include idiots, *non-compotes,* lunatics and distracted persons.   It includes all persons who are not of sound mind from any cause.   When considered in relation to crime, it is a general rule that persons who are in that condition which the law recognizes as of unsound mind, are not responsible criminally for their acts when in that condition.   But it is also true that mere weakness of mind alone, or slight mental ailments which do not exclude the knowledge

of right and wrong and the power to act in accordance with the plain dictates of reason and justice, do not constitute unsoundness of mind in law.

"No. 23. In order that the act shall constitute (a crime), the person must have intelligence and capacity enough to have a criminal intent and purpose, and if his reason and his mental powers are so deficient that he has no will, no controlling or mental power, or if, through the overwhelming violence of mental disease, his intellectual power is for the time obliterated, he is not responsible for his criminal acts. But these are extremes easily distinguished, and not to be mistaken. The difficulty lies between these extremes. In cases of partial insanity, when the mind may be clouded and weakened, but not remembering, reasoning and judging, or so perverted by insane delusions as to act under false impressions or influences. In these cases the rule is this: A man is not to be excused from responsibility if he has capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he is then doing, (to have) a knowledge and consciousness that the act he is then doing is criminal and wrong, and will subject him to punishment. In order to be responsible, he must have sufficient power of memory to recollect the relations in which he stands to others, and in which others stand to him; that the act he is doing is contrary to the plain dictates of justice and right, injurious to others and in violation of the dictates of duty. On the contrary, although he may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequences, if he has a knowledge that it is wrong and criminal and a mental power sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for criminal acts. He is then not insane. The true test is this: Has the defendant in a criminal case the power, at the time he commits the act, to distinguish right from wrong and the power

to adhere to the right and avoid the wrong? Has the defendant, in addition to this, the power to govern his mind, his body and his estate? If he has these powers he must exercise them. He is then in law not a person of unsound mind, and the law will hold him answerable for his acts. But if his mind be so unsound that he has them not, then the law will excuse his act by reason of the unsoundness of his mind."

It is claimed that this last instruction is, on the subject of partial insanity, in conflict with the doctrine of the case of *Sage* v. *State*, 91 Ind. 141, and has no real support from the later case of *Goodwin* v. *State*, 96 Ind. 550.

In its reference to partial insanity there is an evident confusion of terms and phrases in the instruction. Taken in its literal sense, it is abstractly wrong. It will not do, under our statutory definitions of mental unsoundness, to say that a man may be partially insane and yet not insane. The fair inference from that part of the instruction to which we refer, when taken in connection with the context, is that a person may labor under mental weaknesses and infirmities which amount to a seemingly partial insanity without being actually insane.

We have frequently announced the rule to be that in determining the correctness or incorrectness of an instruction it must be considered as a whole, and not in its separate parts; also, in connection with all the other instructions, if any, given at the same time. *Nicoles* v. *Calvert*, 96 Ind. 316; *Louisville, etc., R. W. Co.* v. *Shanklin*, 98 Ind. 573; *Story* v. *State*, 99 Ind. 413.

While the instruction under discussion bears the marks of having been hastily prepared, and might doubtless be much condensed and improved by being more carefully re-written, we think that, considered as a whole and in connection with the two preceding instructions, also above set out, it contains nothing materially injurious to the appellant, and ought not to be regarded as inconsistent with either the case of *Sage*

v. *State*, or of *Goodwin* v. *State*, to which reference has been made.

A more pointed and condensed instruction on the subject of partial insanity, which stated the law correctly, was asked by the appellant and refused by the court, but regarding that branch of the question of insanity as having been sufficiently elaborated by the instructions which had already been given, there was no error in the court's refusal to give a further instruction on the subject.

This cause was tried at the April term, 1884, of the court below, which commenced on Monday, the 28th day of April of that year, and which being by the statute limited to a session of three weeks, closed for all ordinary business on Saturday, the 17th day of the ensuing May.

The record shows that at six o'clock on the evening of said 17th day of May this cause was still on trial and undetermined, and that the court thereupon, at that hour, made the following order and entry of record in its proceedings therein: "The court and jury being engaged in hearing evidence herein, and it being the last day of the present term of this court, and this cause being now on trial and not yet concluded, and the time of this term being insufficient therefor, and the court now orders and directs that this cause shall be continued until Monday, May 19th, 1884, at 10:30 o'clock A. M. of said day last aforesaid, and the court now orders that the jury trying said cause, and all witnesses subpœnaed as such, in this trial, are notified and required to be in attendance on said trial on said day. And to the action of the court in ordering that this cause be continued until Monday, May 19th, 1884, and in directing the jury and witnesses to be present on said day, the defendant now at the time objects, because that there are yet six hours of this term unexpired, and because the court has no power to continue the trial of this cause beyond the present term of this court, and the court overruled said objections."

In the case of *Wright* v. *State*, 5 Ind. 290, it was held that

when a criminal cause was on trial, and undisposed of, at the end of a regular term of court, under circumstances similar to those disclosed in the record in this cause, the court might adjourn over until the following week and continue its session until the cause should be finally disposed of.

That conclusion was based upon section 325, R. S. 1843, p. 733, which was adjudged to have been, inferentially and constructively, continued in force by the criminal code of 1852.

The same parity of reasoning requires us to hold that the section of the R. S. 1843, in question, was continued in force by section 1900, R. S. 1881. In fact that section was incorporated into, and treated as in force, by those charged with the publication of the revision of 1881, and is known as section 1379 of that revision of our statutes. The section referred to is as follows: " If at the expiration of the time fixed by law for the continuance of the term of any court the trial of a cause shall be progressing, said court may continue its sitting beyond such time, and require the attendance of the jury and witnesses, and do, transact, and enforce all other matters which shall be necessary for the determination of such cause; and in such case, the term of said court shall not be deemed to be ended, until the cause shall have been fully disposed of by said court."

It is contended, however, that upon the authority of the case of *Morgan* v. *State*, 12 Ind. 448, the court below ought to have continued in session until midnight of the last day of its regular term before making an order to adjourn over until the following Monday and to continue its session beyond such last day of the term.

We do not stop to inquire how far the case of *Morgan* v. *State*, *supra*, ought to be, and may be safely followed as to the time and as to the circumstances under which a court may lawfully adjourn over and continue in session beyond its regular term. In this case, as has been seen, it was adjudged and made to appear affirmatively, that the cause could

not be finally disposed of within the time to which the term was limited. In that condition of affairs, the order made at six o'clock of the evening of the last day of the term for a continuance of the session of the court beyond that day, was not in any event prematurely made, but was clearly within the spirit and meaning of the section of the R. S. 1843, continued in force as above stated, and properly carried the trial of the cause over until and into the next week.

It is further contended that this last named section, instead of being continued in force by the criminal code of 1881, was in fact repealed by sections 1289, 1290 and 1291 of the revision of that year. We, however, see no room for such a construction of these last named sections, and hence can not agree that such a construction ought to be placed upon them.

The transcript of the proceedings below, when first filed in this court, showed that only eleven of the twelve jurors empanelled to try the cause were present when the verdict was returned into the circuit court. Proceedings were, however, very promptly commenced in that court, after this appeal was taken, to have the record amended in that respect, and notice of the pendency of those proceedings was served on the appellant in prison, as well as upon his attorneys of record below. After hearing the evidence, the circuit court entered an order, *nunc pro tunc*, amending the record as originally made, so as to make it show that all the jurors were present when the verdict was returned, and a transcript of these latter proceedings has been certified to this court, and made a supplemental part of the record now before us.

It is objected that these amendatory proceedings have not cured the defect in the original record; that notice to the appellant while in prison was inoperative, and that the case was one in which notice to an attorney of record was not authorized; also, that the order assuming to amend the defective record was made upon improper and insufficient evi-

dence. In the first place, waiving all question as to the validity of the notice to the attorneys of record, we consider the service of notice upon the appellant, although in prison, as being from the very necessity of the case, sufficient. In the next place, there is nothing in this proceeding which either is or purports to be an appeal from the order making the amendment in question. The assignments of error raise no question upon that order. There is consequently no question before this court, either upon the character or sufficiency of the evidence upon which the order was made. The only inquiry we are required to make concerning these supplementary proceedings is, Did the court below have jurisdiction to make the order *nunc pro tunc* which it assumed to make? That it had complete jurisdiction over the subject is well established by the authorities. The power to amend imperfect records of past proceedings extends to criminal as well as to civil proceedings. See 1 Bishop Crim. Proc., section 1343, *et seq.;* Wharton Crim. Plead. & Prac., section 913; *Smith* v. *State,* 71 Ind. 250.

*Filed June 26, 1885; petition for a rehearing overruled Oct. 10, 1885.*