## CUL LINCECUM v. THE STATE.

*No. 3618.    Decided December 17.*

1.   **Rape—Evidence—Proof of General Character.—** On his trial for rape by assault and by force the defendant proposed to prove his general reputation as a peace-

able and law abiding man. The State objected that the inquiry should be limited to
his general character for chastity and morality, and the trial court sustained the objec-
tion. *Held*, error. The rule is that "in all criminal cases, whenever a criminal intent
is necessary to constitute the offense, evidence of the general character of the defend-
ant is admissible in his behalf." The crime, as charged in this case, carries with it
as an essential element a criminal intent to do the act by assault with force, and with-
out the consent of the female. See the opinion on the question.

2. Same—New Trial—Newly Discovered Evidence.—See the opinion for the
substance of newly discovered evidence set forth in a motion for new trial, *held* mate-
rial and such as under the evidence adduced entitled the defendant to a new trial.

APPEAL from the District Court of Burnet. Tried below before Hon.
W. A. Blackburn.

This conviction was for rape by assault with force, and the penalty as-
sessed against the appellant was a term of twenty-four years in the peni-
tentiary.

As necessary to disclose the materiality of the newly discovered evi-
dence set forth in the motion for new trial, it is sufficient for the purposes
of this report to summarize only the testimony of the prosecutrix for the
State and the defendant in his own behalf, noting that the prosecutrix
first reported the transaction as merely an assault by the defendant with
intent to rape her; that defendant was first arrested upon the complaint
of the father of the prosecutrix, charging him with assault with intent to
rape, and that subsequent to the filing of that complaint the father and
mother of the prosecutrix, speaking (it is to be inferred from the record)
upon the authority of the prosecutrix, declared that defendant assaulted
and attempted to ravish the prosecutrix, but failed to accomplish the act.

The substance of the testimony of the prosecutrix was that she lived
with her parents in Burnet County, about eight miles south from the town
of Lampasas, in Lampasas County. On the evening of December 24, 1889,
she went with her father, brother, and sister to the town of Lampasas for
the purpose of attending a Christmas-tree entertainment. She stopped
at the house of her married brother in town, and late that evening re-
ceived and accepted the invitation of the defendant to go with him to a
party that night at the house of a Mr. Espey, about six miles distant and
southwest of Lampasas. They started to Espey's about dark, traveling
in a large one-horse buggy; arrived between 8 and 9 o'clock and remained
until between 4 and 5 o'clock the next morning, when they started home,
via Lampasas. The defendant addressed the witness during the night
at Espey's and asked her to engage herself to him in marriage, which she
declined to do. He talked desperate love to witness on the return trip
between Espey's house and Lampasas. After leaving Lampasas for the
witness's home, and when they reached a point on the road about a mile
from town, the defendant put his arm around the witness's waist, which
familiarity the witness protested against and resisted. Notwithstanding
the protests of the witness and the utmost physical resistance of which

she was capable, he continued to embrace the waist of the witness until they had traveled the distance of at least two miles. He then attempted to introduce his hand into the bosom of the witness, for the evident purpose of fondling her breasts, and continued such attempts until they had traveled an additional mile and a half. Against this conduct on the part of the defendant the witness vehemently protested and struggled, at the same time imploring and beseeching the defendant to desist, reminding him that she had placed herself under and was entitled to his protection rather than his profanation. Defendant finally said to witness, "If it was not for tearing your dress so that the old folks would catch on, I would show you which is the best man."

Soon after this, the sun then being about one hour high, they reached a branch or ravine, about a quarter or a half mile from the house of Mr. Zach Rogers and about three and a half miles from the witness's home. The defendant stopped the horse in the ravine, suddenly seized the witness by the throat with both hands, pushed her down on the seat and against the buggy bows, the buggy top being down, and choked her until she was nearly insensible. He then removed one hand from her throat—maintaining his hold with the other—and with that hand took out his male member, pulled up the witness's clothes, and by physical force, and against the witness's consent, had carnal knowledge of the witness, accomplishing penetration of her person. After this outrage, and after the journey home was resumed, the witness told the defendant she had a father and grown brother who would avenge the outrage he had committed upon her. The defendant told her in reply that if she reported the fact to any person he would kill her. Reaching home the witness reported to her mother that the defendant had insulted and assaulted her with intent to commit rape upon her. She did not then tell her mother that the defendant succeeded in raping her, for the reason that her said mother was in feeble health, and she feared the effect of such disclosure. A week or ten days afterwards, however, she told her mother the truth about the matter as here testified. She refrained from telling her father and brother and sisters the whole truth for fear they would report the facts to her mother, and thus endanger her life, and for the further reason that she was oppressed with a feeling of shame and mortification. In attempting to introduce his hand into witness's bosom the defendant made a small rent in the witness's dress.

Testifying in his own behalf the defendant stated, in substance, that he took the prosecutrix to Espey's party on the night of December 24, 1889. En route he addressed her, and with her consent became engaged to marry her. In getting out of the buggy at Espey's house the prosecutrix slightly tore her dress in front, and for the purpose of concealing the rent wore her shawl during the party. During one of the dances the witness and the prosecutrix went out on the front gallery and sat down

together on a wagon seat. While sitting there the prosecutrix placed her arms about the neck of the witness, and the witness kissed her. She then said something about the engagement to marry they had entered into that night. To this witness replied: "We are nothing but children and too young to marry. I meant nothing by engaging myself to you." She replied, "If you don't keep your engagement to marry me I will make my father fix you."

It was between 4 and 5 o'clock when the witness and the prosecutrix left Espey's to return to Lampasas. Arriving at Lampasas they found that the father of the prosecutrix had returned to his home, and that it was necessary for the witness to take the prosecutrix home, and he did so. From Lampasas to the house of the prosecutrix the witness drove the buggy without making a stop even for a moment. He made no effort at any time or at any place between Lampasas and her home, or elsewhere, to embrace the prosecutrix, or to put his hands in her bosom, or to fondle her breasts. He regarded her as a lady within the full meaning of that term, and it never entered his mind to attempt any kind of undue familiarity with her person. He did not, either in terms or by implication, solicit the carnal use of her person. He had no carnal knowledge of her person, and made no attempt to obtain such carnal knowledge.

Other witnesses for the defense stated that, explaining at the party why she did not lay aside her shawl, but wore it, the prosecutrix said that she had torn her dress in front and it was necessary to keep her shawl on to conceal the rent.

The opinion states the substance of the newly discovered evidence relied upon in the motion for new trial.

*J. G. Cook* and *Leake, Shepard & Miller*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, and *J. M. Duncan*, for the State.

WHITE, PRESIDING JUDGE.—This is an appeal from a judgment of conviction for rape.

On the trial the defendant offered to prove by the sheriff of Lampasas County, and also by another witness, that they were acquainted with his general reputation in the neighborhood where he lived as "a peaceable man" and "a law abiding man." Objection to this evidence, as made by the State, was that the inquiry should be limited to his general character for chastity and morality. This objection was sustained and the evidence excluded.

"While a defendant's character is presumed to be good until it is impeached, it is always admissible for him to prove that his character was such as to make it unlikely that he would have perpetrated the act charged

upon him." "And the character he is entitled to prove must be such as would make it unlikely that he would be guilty of the particular crime with which he was charged." Whart. Crim. Ev., 9 ed., secs. 57, 60; 3 Am. and Eng. Enc. of Law, p. 110, *et seq.*

Mr. Bishop says: " Probably by all opinions it is competent to give evidence as to the particular trait of character which the indictment impugns. And some deem the inquiry should be limited to such trait, it being obviously irrelevant and absurd on a charge of stealing to inquire into the prisoner's loyalty; or on a trial for treason to inquire into his character for honesty in his private dealings. But by the better reasoning, and according to what is common in practice, in at least part of the States, whilst this consideration should not be wholly disregarded the evidence as to character is permitted a wider range. Goodness and wickedness do not flow altogether in channels, and one of good character in general is less likely to commit a particular wrong than one of bad character in general." 1 Bish. Crim. Proc., 3 ed., sec. 1113; see also 9 Crim. Law Mag., p. 444, *et seq.*

In Jones v. The State, 10 Texas Court of Appeals, 552, it was held that " in criminal prosecutions, where guilty knowledge or criminal intention is of the essence of the offense, it is competent for the defendant to put his general character in evidence with respect to the offense charged against him." That was a case of rape.

In Johnson v. The State, 17 Texas Court of Appeals, 565, which was a case of assault with intent to rape, the extent of the issue presented as to character by the defendant was that his reputation was good as "a peaceable negro, and one who was always polite to white people, especially to ladies," and it was held that it was error to permit the prosecution to investigate the defendant's general reputation as "a law-abiding man" when he had not put it as such in issue. It was not decided in that case that the defendant could not have put in issue his character as "a law-abiding man," but only that defendant not having done so in the first instance, the State could not do so. "The prosecution is not allowed to call witnesses to the general bad character of the prisoner unless to rebut the evidence of his good character already adduced by the prisoner." Coffee v. The State, 1 Texas Ct. App., 548, citing 3 Greenl. Ev., sec. 25; 2 Russ. on Crimes, 704, 786; 1 Phil. on Ev., 469; 1 Bish. Crim. Proc., 3 ed., sec. 64. It is not competent for the prosecution to go into the inquiry until the defendant has voluntarily put his character in issue, and in such case there can be no examination as to particular facts. Commonwealth v. Hardy, 2 Mass., 317; Commonwealth v. Webster, 5 Cush., 324.

In the case under consideration the defendant was charged with rape committed by assault and by force. The crime carries with it as an essential element a criminal intent to do the act by assault with force, and without the consent of the injured female. "In all criminal cases, whenever

a criminal intent is necessary to constitute the offense, evidence of the general character of the defendant is admissible in his behalf." Lann v. The State, 25 Texas Ct. App., 495.

In Matthews v. The State, 32 Texas, 117, evidence of character was rejected as irrelevant to the issue in a trial for assault and battery, the admission of such evidence being held to be in the discretion of the court, and it being invariably admissible only in cases where the life of the prisoner is involved. Such is not the law as we understand it. Mr. Bishop says: "This evidence is admissible in all offenses, the high and low alike," where the defendant's character is in any manner fairly involved. 1 Bish. Crim. Proc., 3 ed., sec. 1114; 2 Lead. Cr. Cases, 2 ed., 351, and note.

In all cases where an accused is charged with personal violence upon another he should be permitted to prove his general character for peace and quiet—that is, that he is a peaceable man. Comm. v. Mitchell, 1 Brewst., 563; Sawyer v. The People, 1 N. Y. Cr. Rep., 249; Walker v. The State, 102 Ind., 502.

The case of The State v. Lee, 22 Minnesota, 407, was a rape case, and it was there held that "quiet and peaceable character" may be proved in defense to an indictment for rape.

Guided by the light and reason of the authorities cited, we are of opinion the court erred in rejecting defendant's proffered evidence as to character.

One of the defendant's grounds of motion for new trial was the newly discovered evidence of one Hubert Robinson. The testimony of the prosecutrix was that the rape was committed upon her on the public road; that defendant stopped his buggy in a ravine and ravished her in the buggy. Robinson swears that he was hunting horses near the said road; that he saw the defendant and a lady in a buggy pass the road not seventy-five yards from him; that ten minutes afterwards he came into the same road going in the same direction, and traveling at about the same rate of speed they did; that when he passed the house of Rogers, near where the prosecutrix said the rape occurred, he saw a buggy with top up in the same road about three-quarters of a mile ahead of him. He says that he, Robinson, traveled on behind Lincecum and the lady; that he did not see them stop anywhere on the road, and that if they had stopped any length of time he, Robinson, would have seen them while they were stopped, if they stopped at all.

We think the evidence important, in view of the facts in the case. The jury, if such evidence had been before them, might have doubted if the rape could have been accomplished as stated by the prosecutrix, and the buggy have had time to go three-quarters of a mile beyond the place of the crime at an ordinary gait in the space of ten minutes—the time the buggy was out of sight of the witness Robinson.

We are of opinion that the court should have granted a new trial on account of this newly discovered evidence, and that it was error to refuse it.

For the errors discussed the judgment is reversed and the cause re-manded.

*Reversed and remanded.*

Judges all present and concurring.