UNITED STATES ex rel. Earl Louis
GOODCHILD, Jr., Petitioner-
Appellant,

v.

John C. BURKE, Warden, Wisconsin State
Prison, Respondent-Appellee.

No. 11955.

United States Court of Appeals
Seventh Circuit.

June 11, 1957.

John E. Coons, Chicago, Ill., for appellant.

Stewart G. Honeck, Atty. Gen., William A. Platz, Asst. Atty. Gen., for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

DUFFY, Chief Judge.

Petitioner was convicted on two counts of the crime of second degree murder before a Wisconsin State Court. On appeal to the Wisconsin Supreme Court the judgment of conviction was affirmed. State v. Goodchild, 1956, 272 Wis. 181, 74 N.W.2d 624, certiorari denied, 1956, 351 U.S. 958, 76 S.Ct. 852, 100 L.Ed. 1480.

On June 12, 1956, petitioner filed in the United States District Court for the Eastern District of Wisconsin, a petition for a writ of habeas corpus. He filed an amended petition on July 18, 1956. On September 7, 1956 the District Court dismissed the petition, the order of dismissal reciting that the Supreme Court of Wisconsin had passed upon and rejected identical claims, and that the petition presented no additional facts showing a violation of his constitutional rights.

On November 26, 1956, petitioner filed another petition for a writ of habeas corpus in the same court and leave was granted for him to proceed in forma pauperis. On the same day the Court dismissed the petition for the reason it was substantially similar to the petition

which previously had been considered by the Court, and which had been dismissed under date of September 7, 1956. Notice of appeal was filed, a certificate of probable cause was issued by the District Court, and the petitioner was granted leave to appeal to this Court in forma pauperis. We appointed John E. Coons, Esq., of the Chicago Bar to represent petitioner. We wish to express our thanks to Mr. Coons for his able and vigorous prosecution of this appeal.

Petitioner asserts an exhaustion of his state remedies. He alleges there has been a substantial violation of his rights guaranteed by the Due Process clause of the Fourteenth Amendment. Although no claim is made that petitioner was subjected to any violence or threats by the state authorities, it is claimed that prior to arraignment he was subjected to four days' detention, interrogation and psychological pressures and generally that the confessions received in evidence at his trial were obtained by improper means.

On the evening of March 13, 1953, petitioner and his father left their apartment in the city of Two Rivers, Wisconsin, and visited a number of taverns. In one of these they met Everett Becker, who was a friend of the father. The three then visited two more taverns driving in Becker's automobile. As they left their last stopping place about 1:00 A.M., petitioner got into the rear seat of Becker's car and fell asleep. When he awakened, the car was standing in front of the apartment where he and his father lived, but Becker and his father had left the automobile.

Petitioner testified at his trial that he took Becker's car keys and went upstairs to the apartment and placed his coat on the bed; that he remembered nothing further until he found himself sitting in Becker's car with a shotgun across his lap; that he went up to the apartment and found his father dead on the floor and that Becker was also lying on the floor but still alive; that he aroused people living in a lower flat asking them

to call a doctor, which they did. Both petitioner's father and Becker died as the result of gunshot wounds.

Petitioner was taken into custody between 3:00 A.M. and 4:00 A.M. on Saturday, March 14, 1953. He was first taken to the Two Rivers police station and then to the county jail. In the afternoon he was returned to the police station where he agreed to repeat before a stenographer the statement he had made that morning. A 28-page statement was reduced to writing and signed by petitioner. We do not have the document before us but apparently it was not a confession that petitioner had committed the murders. From the record of his State Court appeal, it appears petitioner was not then under arrest but was being held as a material witness.

On Sunday evening, March 15, petitioner gave the authorities a second statement after which he was formally placed under arrest. Again we do not have the statement before us, but apparently it was not a confession that petitioner had committed the crimes. He was advised of his right to have counsel, and that he was entitled to hospitalization if he was not mentally well. There had been some suggestion by the District Attorney and other officials that he might not be mentally responsible.

On Monday, March 16, petitioner was taken from the county jail to the State Crime Laboratory at Madison. There is no evidence or claim that he objected to making this trip. He was interviewed at the Laboratory but claiming that he was ill and upset, he requested that the interview be discontinued. This was done. No confession was obtained. Petitioner agreed to return to the Laboratory for further examination at some later date. Petitioner was returned to the jail at Manitowoc. On the following day, March 17, he was arraigned in the Municipal Court and charged with an offense. He waived preliminary examination. He did not have counsel with him but did make some statement to the

effect that he did not desire to have counsel at that time.

On March 20, petitioner was brought into Circuit Court for a hearing on a motion by the District Attorney for a mental and physical examination of the petitioner. An information was filed and read to him but he did not plead. The Court advised him of his right to counsel and also his right to have counsel appointed for him if he were indigent. He again stated that he did not desire counsel at that time. An order was entered directing that petitioner be taken to Bradley Memorial Hospital in Madison for observation.

On March 26, 1953, petitioner was taken from the jail at Manitowoc to Madison. It is not clear whether the authorities learned at that time or on some date previously that the Bradley Memorial Hospital would not accept him for observation. Petitioner was taken to the State Crime Laboratory, also located in Madison, and he and a member of the staff went to a restaurant for coffee or a light breakfast. This staff member suggested to petitioner that he tell the Chief of Police the truth. The Chief and petitioner had an interview and a statement was made by the petitioner admitting the murders, and this statement was tape-recorded. The Confession was given between 1:00 and 1:30 P.M. after petitioner had been in Madison about two or two and a half hours, including the time spent at breakfast. In the confession petitioner admitted going upstairs and killing his father and Becker with a 22 calibre rifle. There is no claim by petitioner that any threats were made or physical violence used at the Laboratory.

Petitioner was returned to Manitowoc and was taken to the District Attorney's office where he repeated the confession to the District Attorney. A stenographer was called in to take the confession. The petitioner read same and signed it. At this time petitioner was again advised of his right to counsel.

On March 30, 1953, petitioner was again brought before the Circuit Court of Manitowoc County, and a second information was read. Petitioner was again advised as to his right to counsel. At petitioner's request, the Court appointed Mr. Dewane, a former District Attorney, as his counsel.

On April 7, 1953, petitioner was again brought before the Circuit Court, and he was represented by Dewane. The Court amended the order previously entered on March 20, 1953 and directed that petitioner be committed to the State Hospital at Waupun for observation. He remained there until sometime in May, 1953. A report was made by Dr. Kleper that petitioner was sane. Petitioner confessed to Dr. Kleper that he had committed the murders.

A preliminary examination of petitioner was held before the Municipal Court of Manitowoc County on May 28, 1953. Petitioner's counsel objected to the receipt in evidence of the confession made on March 26, but was overruled. On May 29, 1953, petitioner was bound over to the Circuit Court for trial.

The trial of petitioner before a court and jury was commenced in the Circuit Court on August 31, 1953. Petitioner was represented by Attorney Dewane. The several confessions made by petitioner were received into evidence without objection. Petitioner testified at the trial and claimed the confessions were fabrications. Dr. Kleper and two other well-known psychiatrists testified petitioner was sane at the time when petitioner's father and Becker were killed. The jury found petitioner guilty on two counts of murder in the second degree.

Petitioner relies principally upon the claim that the detention and interrogation from March 14 to March 17 were a violation of his rights under the Due Process provision of the Fourteenth Amendment. Although petitioner gave at least two statements during this period, no confession of the crime was elicited.

Petitioner's detention up to March 17 without formal charge was not illegal under Wisconsin law. The earliest date he could have been arraigned

was Monday, March 16. The delay until the following day was not unreasonable. The rule in Wisconsin is that where a suspect has been taken into custody upon probable cause to suspect him of a felony, the officials are "entitled to a reasonable time * * *, as a matter of law, to determine whether to make a formal complaint against the [suspect] or release [him] from custody." Peloquin v. Hibner, 1939, 231 Wis. 77, 86–87, 285 N.W. 380, 385. Of course, the fact that detention was legal under Wisconsin law does not foreclose an inquiry in the Federal Courts whether, during that period, the state authorities violated petitioner's rights under the Fourteenth Amendment.

We do not have before us a case where a prisoner was subjected to brutality or physical coercion. While the authorities questioned him over a period of several days, such questioning was intermittent. The questioning just prior to petitioner confessing at the Laboratory on March 26 could not have exceeded two hours. Petitioner frankly stated he had no complaint as to his treatment at the Laboratory. There were no relays of questioners, a procedure condemned in Turner v. Commonwealth of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810.

There is no showing in this record to sustain the claim of psychological pressure. In Stein v. People of State of New York, 346 U.S. 156, 184, 73 S.Ct. 1077, 1092, 97 L.Ed. 1522, it was stated: "This Court never has held that the Fourteenth Amendment prohibits a state from such detention and interrogation of a suspect as under the circumstances appears reasonable and not coercive." As the court there stated, such inquiries do have limits. " * * * The limits in any case depend upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." 346 U.S. 156, 185, 73 S.Ct. 1077, 1093.

Although petitioner had a record of some instability, he was an adult of some thirty years of age, had served five years in the armed forces, was a high school graduate, and made the confession, as he stated, to finally get it off his chest.

The Supreme Court of Wisconsin specifically passed on petitioner's claim that his constitutional rights were violated when he was taken to and interrogated at the State Crime Laboratory, and that his arraignment was unreasonably delayed and as a result thereof he was placed in a state of "psychological turmoil." The Court likewise considered the claim that petitioner's confessions were improperly received in evidence. State v. Goodchild, 272 Wis. 181, 182, 74 N.W.2d 624. All of these contentions were rejected.

■ When the merits of the claims of a petitioner for habeas corpus in a federal district court have been passed upon by the highest court of the state, a Federal District Court usually is justified in declining to grant a writ of habeas corpus. Brown v. Allen, 344 U.S. 443, 464–465, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. O'Connell v. Ragen, 7 Cir., 212 F.2d 272; Harrison v. Skeen, 4 Cir., 226 F.2d 217, 218. We think, under the circumstances of this case, the District Court was justified in dismissing the petition without a hearing.

■ A further reason why the District Court was justified in dismissing the petition was that when the first petition was dismissed on September 7, 1956, there was no appeal therefrom. The appeal in this case is from the order dismissing a new petition which petitioner filed on November 26, 1956. Title 28 U. S.C.A. § 2244 provides: "No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States, or of any State, if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry."

In this case the District Court specifically found that the second application for habeas corpus contained substantially similar allegations to those presented in the petition first filed.

Affirmed.