Leslie **IRVIN**

v.

A. F. **DOWD**, as Warden of the Indiana State Prison at Michigan City, Indiana.

**Civ. No. 2250.**

United States District Court
N. D. Indiana,
South Bend Division,
July 8, 1957.

Theodore Lockyear, Jr., James D. Lopp, Evansville, Ind., James D. Nafe, South Bend, Ind., for petitioner.

Robert O'Mahoney and Carl Franceschini, Deputy Attys. Gen., for respondent.

PARKINSON, District Judge.

This is a habeas corpus proceeding initiated by the petitioner on July 2, 1957 upon the presentation thereby to this court of a verified petition for the writ alleging that the petitioner had been tried, convicted and sentenced to death by electrocution on July 9, 1957 by the Gibson Circuit Court of Gibson County, Indiana without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and that he had exhausted all his remedies in the state courts of Indiana.

With his petition for writ of habeas corpus, he filed a petition, with pauper's affidavit thereto attached, for leave to proceed in forma pauperis and for appointment of counsel and a petition for stay of execution.

This court granted leave to the petitioner to file his petition for writ of habeas corpus in forma pauperis and appointed James D. Lopp, Theodore Lockyear, Jr. and James D. Nafe as counsel for and to represent the petitioner herein.

The petitioner having alleged that he had exhausted all remedies by appeal and otherwise before the courts of the State of Indiana and specifically that the Supreme Court of Indiana had held

in an unreported opinion on March 13, 1957 it had no further jurisdiction in petitioner's case, this court granted the writ, and, by agreement of the parties, assigned the cause for hearing on July 5, 1957.

Prior to the hearing the respondent filed return wherein he denied the allegations of the petition and certified the true cause of detention being under the commitment of the Gibson Circuit Court, and the petitioner filed a traverse thereto.

Upon the issues thus formed the cause was tried to the court and upon conclusion of the hearing on July 5, 1957, the court announced from the bench that it would render its decision by written opinion to be filed with the clerk of this court at 9:00 a.m. on Monday, July 8, 1957.

As the findings of fact and conclusions of law will appear in this opinion it will be filed, as the court announced from the bench, and will so serve.

 Counsel are in error when they assume that by the issuance of the writ herein this court determined that the petitioner had exhausted his state court remedies. The petitioner alleged in his petition that he had exhausted all of his state court remedies, otherwise, the court would not have ordered the writ to issue, but these allegations were denied by the respondent and this court, therefore, should determine that question at any stage of the proceedings because the doctrine of exhaustion of state remedies, while not precisely jurisdictional to the consideration of a petition for habeas corpus, involves a concept of broad judicial policy stemming from the concern of the federal courts to preserve the delicate balance of authority between the state and federal judiciary, and reviewing courts are required to apply the doctrine even on appeal from a District Court after issuance of the writ and a hearing therein resulting in the discharge of the petitioner. Schilder v. Gusik, 6 Cir., 1950, 180 F.2d 662; United States ex rel. Touhy v. Ragen, 7 Cir., 1955, 224 F.2d 611.

In face of the allegations of exhaustion of remedies in his petition, the petitioner offered in evidence the transcript filed by him on his appeal to the Supreme Court of Indiana which clearly establishes the fact that after the jury returned its verdict on December 20, 1955 and the Gibson Circuit Court had pronounced sentence thereon on January 9, 1956, the petitioner escaped from the Gibson County jail and the custody of the Sheriff on January 18, 1956, and wrote a letter to one of his attorneys informing him that he knew it was the wrong thing for him to do but if the court would grant him a new trial he would come back, a copy of which was filed with the court and made a part of the record.

The following day, January 19, 1956, his attorneys filed a motion for new trial in the Gibson Circuit Court and on January 23, 1956 the petitioner was still a fugitive from justice with his whereabouts unknown when his attorneys appeared before the court and the court overruled the motion for new trial.

Indiana is a code state and under its criminal code (Section 9–1903, Burns' 1956 Replacement), the causes for a new trial in a criminal case are specified and provides that a motion for a new trial must be in writing and filed within thirty days from the date of the verdict.

 Petitioner's time for filing a motion for new trial expired under the statute on January 19, 1956. He was then without the jurisdiction of the Gibson Circuit Court by his own unlawful act in escaping from the jail where he was being held in custody and was still at large on January 23, 1956 when the Gibson Circuit Court denied the motion filed by the attorneys for the petitioner. By his own unlawful act he forfeited his right to utilize the adequate state corrective processes which were available to him and he has thereby failed to exhaust the remedies made available to him in the state courts of Indiana.

He now applies to this court for relief from the judgment of the Gibson Circuit Court and asks this court to hold

that he was there denied due process of law and that this court in effect grant him a new trial.

■ The Supreme Court of Indiana, Irvin v. State, 139 N.E.2d 898, held that the petitioner was not entitled during the period he was a fugitive from the Gibson Circuit Court, to any standing in that court or to file any plea or ask any consideration therefrom. That is the law, Allen v. State of Georgia, 1897, 166 U.S. 138, 141, 17 S.Ct. 525, 526, 41 L. Ed. 949, and in that holding we concur.

During that period, the time for petitioner to file a motion for new trial expired and to paraphrase the words of Chief Judge Duffy on page 616 of 224 F.2d in Touhy, supra, we hold that there were available to petitioner adequate state corrective processes which he did not utilize and that he was not prevented by any State officials from utilizing such processes, and that petitioner's petition for writ of habeas corpus must be denied because he had not exhausted his State remedies.

We, therefore, conclude that the petitioner by his own unlawful act in escaping from the custody of the Sheriff of Gibson County, Indiana and thereby absconding from the jurisdiction of the Gibson Circuit Court and remaining a fugitive from the custody thereof and without its jurisdiction during the statutory period when his time for filing a motion for new trial expired, foreclosed himself from and forfeited the right to utilize the adequate corrective processes available to him in the courts of the State of Indiana and that he has failed to exhaust the remedies available to him in the state courts of Indiana, which is an absolute bar to relief by habeas corpus in this court, and his petition must, therefore, be dismissed.

Although this court could rest its decision herein squarely upon the failure of the petitioner to exhaust his remedies in the state courts of Indiana, we will consider the contentions of the petitioner wherein he claims denial of due process whether they present non-federal procedural questions under the law of In-diana or a federal question under the Fourteenth Amendment.

The petitioner contends that the Gibson Circuit Court denied him due process by denying him a hearing on and a continuance and a change of venue from Gibson County because of bias, prejudice, hostility and excitement in Gibson County.

The facts are that the murder for which the petitioner was tried in the Gibson Circuit Court was committed in Vanderburgh County, Indiana, on December 23, 1954, and an indictment was returned by the Grand Jury of Vanderburgh County on April 21, 1955. On May 10, 1955 the defendant filed a motion and affidavit for a change of venue with prayer that the venue of the action be changed from Vanderburgh County, Indiana to some other county in Indiana, and with the defendant present in court in person and by counsel the motion was sustained by the Vanderburgh Circuit Court and without objection of the defendant the cause was venued to the Gibson Circuit Court of Gibson County, Indiana.

On May 17, 1955 the Gibson Circuit Court, at the request of the defendant, appointed Theodore Lockyear, Jr. as counsel for him and on May 18, 1955 the court, at the request of the defendant, appointed James D. Lopp to assist Mr. Lockyear as counsel for the defendant, and after the disposition of certain motions by the court, none of which rulings are here questioned, on September 12, 1955 the court assigned the cause for trial before a jury on November 14, 1955 without objection by the defendant, he being present in court in person and by counsel. Thus the trial commenced on November 14, 1955, almost eleven months after the crime had been committed and more than eight months after the defendant had confessed to not only the murder for which he was being tried but to other murders also.

Because of the number of murders and the magnitude of the crimes to which the petitioner had confessed, some of the information having been given to the

press at the request and direction of the petitioner himself, there was a great amount of publicity in the press and on the radio and television, and it would have made no difference where or when the petititoner had been tried it would have been the same. Even at this late date the proceedings in this court have had statewide publicity.

Under the law in Indiana whether a continuance should be granted on account of public excitement rests within the discretion of the trial court. Walker v. State, 1894, 136 Ind. 663, 36 N.E. 356, and even on direct appeal the Supreme Court of Indiana will not reverse unless the record shows a clear abuse of such discretion. This record contains no such showing. The truth about the matter is that the only way to avoid the publicity attendant at a trial of petitioner would be to never try him. That might have an appeal to him but it has no place in the law of a free and civilized people.

Section 9–1305, Burns' 1956 Replacement provides, in applicable part, that when an affidavit for a change of venue is founded upon excitement and prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change of venue to the most convenient county but provides that only one change from the county shall be granted. The Vanderburgh Circuit Court followed the mandate of this statute and, on petitioner's motion, granted a change of venue from Vanderburgh County to Gibson County and the Gibson Circuit Court followed the statute and denied the motion of the defendant for another change.

In the case of State ex rel. Fox v. La Porte Circuit Court, Ind.1956, 138 N.E.2d 875, the Supreme Court of Indiana had this question squarely before it and held that the right to a second change of venue does not exist by virtue of this statute and that the statute specifically limits the right to only one such change. The question of the constitutionality of this statute was not raised in the Gibson Circuit Court nor is it here raised, therefore, the statute limits the change to one. One means one, it doesn't mean two. If the statute is unconstitutional that is one thing, but where no question of its constitutionality is raised then the statute must be followed and when the courts begin declaring that the legislature said one but meant two, we are indeed in a very bad way.

The contention that mob rule prevailed in the courtroom during the trial is not supported by any evidence whatsoever. The petitioner did not take the witness stand in this court and so testify, in fact, the petitioner did not testify in this court at all and the only evidence he offered was the transcript on his appeal to the Supreme Court of Indiana, and the testimony of Paul Wever, called as a witness by the respondent, was exactly to the contrary and the fact that certain prospective jurors on voir dire examination expressed themselves as believing the defendant to be guilty is of no import because none of them were permitted to serve as members of the jury which tried the defendant.

The next contention that eight of the twelve jurors which did try the cause were of the preconceived opinion that the petitioner was guilty and so stated on their voir dire examination would have some merit if the questions and answers set out in the petition constituted the entire examination of the named jurors. However, such is not the case at all.

Under the law in Indiana the competency of a juror is not to be determined from one question alone but from all that he says on the subject. Pemberton v. State, 1894, 11 Ind.App. 297, 38 N.E. 1096. This court has read the entire voir dire examination of all of these jurors of which the petitioner complains, and from all that they said on the subject the real substance is that they had formed or expressed an opinion founded solely on newspaper reports and other comments and reports but not upon conversation with witnesses, and notwithstanding such opinion they could

render an impartial verdict based solely upon the law and the evidence.

Section 9–1504, Burns' 1956 Replacement provides that it shall be a good challenge for cause that the prospective juror has formed or expressed an opinion as to the guilt or innocence of the defendant but provides, in that regard, specifically as follows:

"But if a person called as a juror states that he has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or the parties shall thereupon proceed to examine such juror on oath as to the ground of such opinion; and if it appears to have been founded upon reading newspaper statements, communications, comments or reports, or upon rumors or hearsay, and not upon conversation with witnesses of the transaction, or reading reports of their testimony, or hearing them testify, and the juror states on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case."

In the application of this statute the Supreme Court of Indiana in the case of Walker v. State, 1885, 102 Ind. 502, 1 N.E. 856, 858, lays down the proper rule as follows:

"Persons called to serve as jurors are often confused by the incisive and inquisitorial nature of the questions addressed to them touching their qualifications to act in that capacity, and, under a confusion thus induced, frequently give inconsistent and even incoherent answers. It is consequently both just and reasonable that the judge who presides at the trial should be permitted to exercise a large discretion in determining the weight and relative importance which should be given to such answers."

The petitioner contends that the juror, Ernest Hensley, was the worst and on his examination alone this court should hold that the petitioner was denied a fair trial. In the reading of his entire examination it is apparent he was somewhat confused but the acid test is applied in the following interrogation:

"Q. Supposing that he, the defendant, were sitting up there in the jury box instead of you and you were sitting down there as the defendant, would you be willing for him to sit on your jury if you knew he had in his mind the same thoughts, the same opinions, and the same attitudes toward you as you toward him? A. Yes, I would.

"Q. You would be willing for him to do that? A. Yes, I would.

"Q. Now, of course, if you were a defendant, you would rather have your friends sitting on your jury, wouldn't you? A. Oh, yes.

"Q. You would rather, wouldn't you, but if all you were looking for was a fair trial, that would be all right with you for him to sit on your jury. A. Yes, sir.

"Q. If he had the same ideas about you as you have about him? A. Yes, sir.

"Q. Is there any doubt in your mind about that? A. No doubt whatever."

The trial judge observed these prospective jurors and the manner in which they answered the questions propounded to them and heard the answers given thereby. If we take the petitioner at his word that juror Ernest Hensley was the worst, then every one of the twelve jurors who tried the cause was certainly a fair and impartial juror. The trial judge was satisfied that the twelve jurors sworn were qualified and after reading their entire voir dire examination we can find no evidence which would warrant this or any other court holding that they were anything but fair and impartial, and that the Gibson Circuit

Court abused its discretion in admitting them as competent to serve.

The next contention of the petitioner is that his confession was obtained after he had been illegally arrested, interrogated for long periods of time and unlawfully detained for a period of more than seven days without being taken before a court or magistrate in violation of the laws of Indiana, in violation of the due process clause and in contravention of the holding of the Supreme Court in Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801. There is no similarity whatsoever to the facts in this case pertaining to the petitioner's confession and the facts in the Watts case.

 The evidence in this record shows that on April 8, 1955 the petitioner was arrested by the state police for issuing fraudulent checks, which he admitted to Sgt. Cornett, and upon his arrest was lodged in jail at Evansville and a report was made to Parole Officer Bert Miller under whose supervision he was as a parolee from the Indiana State Prison. Miller interviewed the petitioner the following morning and he admitted the fraudulent check charge and also some burglaries and the Parole Officer thereafter assumed technical custody of the petitioner as a parole violator and utilized the only facilities he had, those of the Evansville Police Department, for purposes of custody. April 8, 1955 was a holiday, being Good Friday, and the following day was Saturday with the state parole office in Indianapolis being closed. Miller tried to contact the Indianapolis office on Saturday, April 9, 1955, after the petitioner admitted violation of his parole to him and being unsuccessful had to wait until the following Monday. On Monday, April 11, 1955, he made contact with the Indianapolis office, a warrant for retaking paroled prisoner was sent to him, which he received the following day, Tuesday, April 12, 1955, and he served the warrant on the petitioner that day and informed the petitioner he would remain in custody for the parole board. Accordingly the undis-

puted evidence is that the arrest and custody of the petitioner was absolutely legal.

While the witness Hudson was on the witness stand he was asked the question as to what the petitioner said to him on April 8, 1955, to which the defendant objected and asked leave of court to prove that the confession was obtained under inducement, under the influence of fear produced by threats, intimidation and undue influence and that the officers inflicted physical violence and punishment upon the petitioner, and the court in the absence of the jury heard all of the evidence offered by the petitioner on that subject covering the entire period from April 8, 1955 to April 14, 1955.

 The evidence offered by the petitioner himself established that he was told that he could have an attorney when he was first taken into custody, and he voluntarily confessed to issuing fraudulent checks and to some burglaries in Vanderburgh County. There was no mistreatment of the petitioner, either physical or psychological, and he was permitted to see members of his family and use the telephone; that he voluntarily confessed on April 12, 1955 that he had killed Kerr and asked to see the Prosecuting Attorney Paul Wever, and on Wednesday, April 13, 1955, he confessed to Prosecuting Attorney Wever that he killed Kerr. He never asked for an attorney, although he was told that he could have one, until April 14, 1955 and thereupon the Public Defender, Robert J. Hayes, was called to confer with him. The petitioner introduced in evidence himself a transcript of a tape recording of his conversation with Officer Hudson on April 12, 1955 wherein the petitioner not only confessed to the Kerr murder but to others. The petitioner was permitted to introduce all the evidence he wished to concerning the entire period between April 8, 1955 and April 14, 1955 and after the court had heard all of the evidence, the jury was returned and the witness Hudson was asked the question:

"What, if anything, did the defendant say to you about the murder of Whitney Wesley Kerr when he talked to you on April 12th, 1955?", whereupon the petitioner objected and claims a violation of the due process clause because he was denied the right and opportunity of introducing evidence in support of his offer to prove the illegality of the arrest and the unlawful detention and the unlawful methods used by the officers in obtaining his confession. Of course this was denied by the court, the court had already heard all of the evidence on that subject and it would have been ridiculous to hear it all over again particularly when all of the evidence offered by the petitioner was that his confession was voluntarily made by him.

Under the evidence in the record there isn't the slightest question that the confession of the petitioner was admissible in evidence under the law in Indiana.

The law in Indiana, Pearman v. State, 1954, 233 Ind. 111, 117 N.E.2d 362, is the same as in Wisconsin, Peloquin v. Hibner, 1939, 231 Wis. 77, 285 N.W. 380, and Chief Judge Duffy, speaking for our Seventh Circuit Court of Appeals on June 11, 1957 in the case of United States ex rel. Goodchild v. Burke, 245 F.2d 88, cites the case of Stein v. People of State of New York, 1952, 346 U.S. 156 and quotes from page 184, 73 S.Ct. 1077, page 1092, 97 L.Ed. 1522 wherein the Supreme Court speaks as follows:

> "This Court never has held that the Fourteenth Amendment prohibits a state from such detention and interrogation of a suspect as under the circumstances appears reasonable and not coercive."

That conclusively disposes of all questions attempted to be raised by the petitioner in this court as to the admissibility of his confession in evidence. The petitioner did not take the witness stand in this court and testify that his confession was obtained wrongfully or unlawfully as alleged in his petition, and the only evidence before this court is exactly to the contrary.

The practice of an attorney testifying as a witness and also participating in the trial is certainly not to be commended. However, it is a far cry from a denial of due process in a proceeding which is not a direct but a collateral attack on the judgment of conviction, and the contention of the petitioner that the denial of the petitioner's request to have the argument of counsel reported is completely without any merit whatsoever.

The only other contention that the petitioner was denied the right to introduce evidence that certain jurors who were challenged by the petitioner and selected were biased and prejudiced and were of the opinion the petitioner was guilty in violation of the due process clause has already been disposed of by this court because this court is of the opinion that the voir dire examination of all the jurors who were sworn to try the cause establishes that they were fair and impartial jurors and the trial court did not abuse its discretion in admitting any one of them as competent to serve.

The case of Juelich v. U. S., 5 Cir., 1954, 214 F.2d 950, cited by the petitioner is not analogous under the evidence in this record but the case of Reynolds v. U. S., 1879, 98 U.S. 145, 25 L.Ed. 244, from which the Fifth Circuit Court of Appeals quotes at length, is applicable here and we have followed the law as decided by the Supreme Court in that case.

After a thorough, careful and considered examination of the evidence in the record, this court is of the opinion that the petitioner has failed to sustain the burden of proving the allegations of his petition or any of them by a preponderance of the evidence, and this court now concludes and holds that the petitioner has failed to exhaust the remedies available to him in the state courts of Indiana; that the petitioner was given a fair and impartial trial in the Gibson Circuit Court of Gibson County, Indiana; that the petitioner was not denied due process of law under the Fourteenth Amendment to the Constitution of the

United States; that the detention of the petitioner is legal; that the petition be dismissed and the respondent be discharged from the writ and the petitioner remanded to the custody of the respondent.

The clerk will enter judgment accordingly.

This court having so decided, the petition to stay execution is denied.

The clerk will enter appropriate order.