IRVIN *v.* DOWD, WARDEN, INDIANA STATE PRISON.

No. 63.   Argued January 15, 1959.—Decided May 4, 1959.

*James D. Lopp* and *Theodore Lockyear, Jr.* argued the cause for petitioner. With them on the brief was *James D. Nafe.*

*Richard M. Givan,* Assistant Attorney General of Indiana, argued the cause for respondent. With him on the brief was *Edwin K. Steers,* Attorney General of Indiana.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner brought this habeas corpus proceeding in the District Court for the Northern District of Indiana under 28 U. S. C. § 2241,[1] claiming that his conviction for murder in the Circuit Court of Gibson County, Indiana, was obtained in violation of the Fourteenth Amendment.

---

[1] Section 2241 provides in pertinent part:

"(a) Writs of habeas corpus may be granted by the . . . district courts . . . within their respective jurisdictions.

"(c) The writ of habeas corpus|shall not be extended to a prisoner unless . . .

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . ."

The District Court dismissed the writ, 153 F. Supp. 531, under the provision of 28 U. S. C. § 2254 that habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state . . . ." [2] The Court of Appeals for the Seventh Circuit affirmed. 251 F. 2d 548. We granted certiorari, 356 U. S. 948. [3]

The constitutional claim arises in this way. Six murders were committed in the vicinity of Evansville, Indiana, two in December 1954, and four in March 1955. The crimes, extensively covered by news media in the locality, aroused great excitement and indignation throughout Vanderburgh County, where Evansville is located, and adjoining Gibson County, a rural county of approximately 30,000 inhabitants. The petitioner was arrested on April 8, 1955. Shortly thereafter, the Prosecutor of Vanderburgh County and Evansville police

---

[2] The full text of § 2254 is as follows:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

[3] The case was here previously on Irvin's petition seeking direct review on certiorari to the Indiana Supreme Court from that court's decision in *Irvin* v. *State*, 236 Ind. 384, 139 N. E. 2d 898. Certiorari was denied "without prejudice to filing for federal habeas corpus after exhausting state remedies." 353 U. S. 948. The Indiana Assistant Attorney General, on the oral argument here, advised that there was not then, nor is there now, any state procedure available for the petitioner to obtain a determination of his constitutional claim.

officials issued press releases, which were intensively publicized, stating that the petitioner had confessed to the six murders. The Vanderburgh County Grand Jury soon indicted the petitioner for the murder which resulted in his conviction. This was the murder of Whitney Wesley Kerr allegedly committed in Vanderburgh County on December 23, 1954. Counsel appointed to defend petitioner immediately sought a change of venue from Vanderburgh County, which was granted, but to adjoining Gibson County. Alleging that the widespread and inflammatory publicity had also highly prejudiced the inhabitants of Gibson County against the petitioner, counsel, on October 29, 1955, sought another change of venue, from Gibson County to a county sufficiently removed from the Evansville locality that a fair trial would not be prejudiced. The motion was denied, apparently because the pertinent Indiana statute allows only a single change of venue.[4]

The *voir dire* examinations of prospective jurors began in Gibson County on November 14, 1955. The averments as to the prejudice by which the trial was allegedly environed find corroboration in the fact that from the first day of the *voir dire* considerable difficulty was experienced in selecting jurors who did not have fixed opinions that the petitioner was guilty. The petitioner's

---

[4] Burns' Ind. Stat. Ann., 1956 Replacement Vol., § 9–1305, provides:

"When affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change of venue to the most convenient county. The clerk must thereupon immediately make a transcript of the proceedings and orders of court, and, having sealed up the same with the original papers, shall deliver them to the sheriff, who must, without delay, deposit them in the clerk's office of the proper county, and make his return accordingly: Provided, however, That only one [1] change of venue from the judge and only one [1] change from the county shall be granted."

counsel therefore renewed his motion for a change of venue, which motion was denied. He renewed the motion a second time, on December 7, 1955, reciting in his moving papers: "in the voir dire examination of 355 jurors called in this case to qualify as jurors 233 have expressed and formed their opinion as stated in said voir dire, that the defendant is guilty . . . ." Again the motion was denied. Alternatively, on each of eight days over the four weeks required to select a jury, counsel sought a continuance of the trial on the ground that a fair trial at that time was not possible in the prevailing atmosphere of hostility toward the petitioner. All of the motions for a continuance were denied. The State Prosecutor, in a radio broadcast during the second week of the *voir dire* examination, stated that "the unusual coverage given to the case by the newspapers and radio" caused "trouble in getting a jury of people who are not [*sic*] unbiased and unprejudiced in the case."

The petitioner's counsel exhausted all 20 of his peremptory challenges, and when 12 jurors were ultimately accepted by the court also unsuccessfully challenged all of them for alleged bias and prejudice against the petitioner, complaining particularly that four of the jurors, in their *voir dire* examinations, stated that they had an opinion that petitioner was guilty of the murder charged.[5]

---

[5] The trial judge qualified the jurors in question under the authority of Burns' Ind. Stat. Ann., 1956 Replacement Vol., § 9–1504, which provides:

"The following shall be good causes for challenge to any person called as a juror in any criminal trial:

"Second. That he has formed or expressed an opinion as to the guilt or innocence of the defendant. But if a person called as a juror states that he has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or the parties shall thereupon proceed to examine such juror on oath as to the ground of such opin-

Also, at the trial, the State's Prosecuting Attorney took the stand as part of his presentation of the State's case, and over petitioner's objection was allowed to testify that the petitioner, five days after his arrest, on April 13, 1955, had orally confessed the murder of Kerr to him. The Prosecuting Attorney was also permitted in summation, again over petitioner's objection, to vouch his own testimony by commenting to the jury, "I testified myself what was told me."

The opinions of the Indiana Supreme Court and the District Court held the constitutional claim to be without merit. *Irvin* v. *State*, 236 Ind. 384, 392–394, 139 N. E. 2d 898, 902; *Irvin* v. *Dowd*, 153 F. Supp. 531, 535–539. On the other hand, Chief Judge Duffy of the Court of Appeals, concurring in the affirmance of the dismissal by the District Court, reached a contrary conclusion: "Irvin was not accorded due process of law in the trial which resulted in his conviction and death sentence. In my judgment, he did not receive a fair trial because some of the jury had preconceived opinions as to defendant's guilt, and also because of the conduct of the prosecuting attorney." 251 F. 2d 548, 554.

The Gibson County jury returned its verdict on December 20, 1955, and assessed the death penalty. Indiana law allows 30 days from the date of the verdict within which to file a motion for a new trial in the trial court. Burns' Ind. Stat. Ann., 1956 Replacement Vol.,

ion; and if it appears to have been founded upon reading newspaper statements, communications, comments or reports, or upon rumors or hearsay, and not upon conversation with witnesses of the transaction, or reading reports of their testimony, or hearing them testify, and the juror states on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case."

§ 9–1903. The petitioner's counsel, on January 19, 1956, the 30th day, filed such a motion specifying 415 grounds of error constituting the alleged denial of constitutional rights. However, the petitioner had escaped from custody the night before, January 18, 1956, and on January 23, 1956, the trial court overruled the motion, noting that the petitioner had been an escapee when the motion was filed and was still at large. The petitioner was captured in California about three weeks later and, on February 17, 1956, was confined in the Indiana State Prison.

Under Indiana law the denial of the new trial was not appealable, but was reviewable by the Indiana Supreme Court only if assigned as error in the event of an appeal from the judgment of conviction. The State Supreme Court has held:

> "The statute [providing for appeal] does not authorize an appeal from every ruling which a court may make against a defendant in a criminal action, but only authorizes an appeal 'from any judgment . . . against him,' and provides for review, upon such appeal, of decisions and rulings of the court made in the progress of the case. This court has construed the statute as authorizing an appeal only from a final judgment in a criminal action. The action of a trial court in overruling a motion for a new trial may be reviewed upon an appeal from a judgment of conviction rendered against a defendant, but the overruling of a motion for a new trial must be assigned as error. In such case the appeal is from the judgment of conviction and not from the ruling upon the motion for a new trial. The overruling of a motion for a new trial does not constitute a judgment and an appeal does not lie from the court's action in overruling such motion." *Selke* v. *State*, 211 Ind. 232, 234, 6 N. E. 2d 570, 571.

The judgment of conviction imposing the death sentence was entered January 9, 1956. The petitioner was entitled to appeal, as a matter of right, from that judgment, provided, in compliance with a State Supreme Court rule,[6] the appeal was perfected by filing with the Clerk of the Supreme Court a transcript of the trial record and an assignment of errors within 90 days of the judgment. The Supreme Court may, in its discretion, extend the time on proper motion made within the 90-day period. The questions before the Supreme Court are those raised by the appellant in his assignment of errors.

---

[6] Rule 2-2 of the Supreme Court of Indiana, Burns' Ind. Stat. Ann., 1946 Replacement Vol. 2; pt. I, p. 8, provides:

"Time for appeal or review.—In all appeals and reviews the assignment of errors and transcript of the record must be filed in the office of the clerk of the Supreme Court within 90 days from the date of the judgment or the ruling on the motion for a new trial, unless the statute under which the appeal or review is taken fixes a shorter time, in which latter event the statute shall control. If within the time for filing the assignment of errors and transcript, as above provided, it is made to appear to the court to which an appeal or review is sought, notice having been given to the adverse parties, that notwithstanding due diligence on the part of the parties seeking an appeal or review, it has been—and will be impossible to procure a bill of exceptions or transcript to permit the filing of the transcript within the time allowed, the court to which the appeal or review is sought may, in its discretion, grant a reasonable extension of time within which to file such transcript and assignment of errors. When the appellant is under legal disability at the time the judgment is rendered, he may file the transcript and assignment of errors within 90 days after the removal of the disability."

The statutory provision for appeal is Burns' Ind. Stat. Ann., 1956 Replacement Vol., § 9-2301, which provides:

"Appeal by defendant—Decisions and orders reviewed.—An appeal to the Supreme Court . . . may be taken by the defendant as a matter of right, from any judgment in a criminal action against him, in the manner and in the cases prescribed herein; and, upon the appeal, any decision of the court or intermediate order made in the progress of the case may be reviewed."

On March 22, 1956, the petitioner applied for an extension of time within which to file the trial transcript and his assignment of errors. This was after he was returned to the custody of the State and well within 90 days from January 9, 1956, the date of the judgment of conviction. We were advised on oral argument that the State objected to this motion "because he [petitioner] had escaped," and a hearing was held on the objection by the State Supreme Court. Petitioner's motion was granted and the time was extended to June 1, 1956. The assignment of errors, timely filed with the trial transcript of some 5,000 pages, assigned only one ground of error—that "the [trial] Court erred in overruling appellant's motion for new trial." The petitioner's brief of over 700 pages opened by advising the State Supreme Court that "Under this single assignment of error, the appellant has combined all errors alleged to have been committed prior to the filing of the motion for a new trial." In short, the form of the assignment was a shorthand way of specifying the 415 grounds stated in the motion for new trial as constituting the claimed denial of constitutional rights. Indeed the only arguments made in the lengthy brief related to the constitutional claim. The State's brief devoted some 70 pages to answering these contentions, and in 7 additional pages argued that in any event the Circuit Court had not erred in denying the motion for a new trial because the petitioner was an escapee at the time it was filed and decided.

The case before the Indiana Supreme Court was thus an appeal perfected in full compliance with Indiana procedure; therefore, the court was required under Indiana law to pass on the merits of the petitioner's assignment of error. That the assignment of error was sufficient to present the constitutional claim is evident from the court's acceptance of it as the basis for considering the 415 grounds of alleged error constituting that claim.

However, under the single assignment of error, the judgment of conviction could be affirmed by the State Supreme Court if, for any reason finding support in the record, the motion for a new trial was properly overruled. The State argued that the overruling should be upheld on either of two grounds: one, because the petitioner was an escapee at the time the motion was made and decided, and, two, because the trial itself was fair and without error. Petitioner's appeal clearly raised both of these issues and the Indiana Supreme Court discussed both in its opinion.

We think that the District Court and Court of Appeals erred in concluding that the State Supreme Court decision rested on the ground that the petitioner was an escapee when his motion for a new trial was made and decided. On the contrary, the opinion to us is more reasonably to be read as resting the judgment on the holding that the petitioner's constitutional claim is without merit. As we have shown, under the state procedure, the State Supreme Court could have rested its decision solely on the federal constitutional claim.[7] This, we think, is what the Indiana high court did. The opinion discusses both issues. The discussion of the escape issue concludes with the statement, "No error could have been committed in overruling the motion for a new trial under the circumstances." 236 Ind., at 392, 139 N. E. 2d, at 902. But the opinion proceeds: "Our decision on the point under examination makes it unnecessary for us to consider the other contentions of the appellant; however, because of the finality of the sentence in the case we have reviewed the evidence to satisfy ourselves that there is no miscarriage of justice in the case." 236 Ind., at 392–393, 139 N. E. 2d, at 902. The conclusion reached after discussion of the merits is: "It does not appear from the record and argument had,

---

[7] This conclusion was also expressed on the oral argument in this Court by the State's Assistant Attorney General.

that the appellant was denied due process of law under the Fourteenth Amendment . . . ." 236 Ind., at 394, 139 N. E. 2d, at 902. The court's statement that its conclusion on the escape point made it "unnecessary" to consider the constitutional claim was not a holding that the judgment was rested on that ground. Rather the court proceeded to determine the merits "because of the finality of the sentence" and "to satisfy ourselves that there is no miscarriage of justice." In this way, in our view, the State Supreme Court discharged the obligation which rests upon "the State courts, equally with the courts of the Union, . . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . ." *Robb* v. *Connolly,* 111 U. S. 624, 637. We thus believe that the opinion is to be read as rested upon the State Supreme Court's considered conclusion that the conviction resulting in the death sentence was not obtained in disregard of the protections secured to the petitioner by the Constitution of the United States.

In this posture, 28 U. S. C. § 2254 does not bar the petitioner's resort to federal habeas corpus. The doctrine of exhaustion of state remedies in federal habeas corpus was judicially fashioned after the Congress, by the Act of February 5, 1867, greatly expanded the habeas corpus jurisdiction of the federal courts to embrace "all cases where any person may be restrained of his . . . liberty in violation of the constitution, or of any treaty or law of the United States . . . ." 14 Stat. 385. Although the statute has been re-enacted with minor changes at various times the sweep of the jurisdiction granted by this broad phrasing has remained unchanged.[8]

Since there inhered in this expanded grant of power, beside the added burden on the federal courts, the poten-

---

[8] The substance of the original Act of 1867 is now found in 28 U. S. C. § 2241, see note 1, *supra.*

tiality of conflict between federal and state courts, this Court, starting with the decision in *Ex parte Royall*, 117 U. S. 241, developed the doctrine of exhaustion of state remedies, a "rule . . . that the . . . Courts of the United States, while they have power to grant writs of *habeas corpus* for the purpose of inquiring into the cause of restraint of liberty of any person in custody under the authority of a State in violation of the Constitution, . . . yet, except in cases of peculiar urgency, ought not to exercise that jurisdiction by a discharge of the person in advance of a final determination of his case in the courts of the State, . . ." *Tinsley* v. *Anderson*, 171 U. S. 101, 104–105. The principles are now reasonably clear. "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." *Ex parte Hawk,* 321 U. S. 114, 116–117. The principles of the doctrine have been embodied in 28 U. S. C. § 2254 which was enacted by Congress to codify the existing habeas corpus practice. See *Darr* v. *Burford,* 339 U. S. 200, 210–214; *Young* v. *Ragen,* 337 U. S. 235, 238, note 1; *Brown* v. *Allen,* 344 U. S. 443, 447–450. As is stated in the Reviser's Note: "This new section is declaratory of existing law as affirmed by the Supreme Court." [9]

The petitioner in this case plainly invoked "all state remedies available" and obtained "a final determination" of his constitutional claim from the Indiana Supreme Court. Certainly *Brown* v. *Allen,* 344 U. S. 443, relied

[9] For the legislative history, see H. R. Rep. No. 2646, 79th Cong., 2d Sess., p. A172; H. R. 3214, 80th Cong., 1st Sess.; H. R. Rep. No. 308, 80th Cong., 1st Sess., p. A180; S. Rep. No. 1559, 80th Cong., 2d Sess., pp. 9–10.

upon by the Court of Appeals, does not bear on his situation. In that case the two petitioners in *Daniels* v. *Allen* had 60 days in which to make and serve a statement of the case on appeal from a conviction in the state trial court. Counsel failed to serve this statement until 61 days had expired, and the trial judge struck the appeal as out of time. The pertinent North Carolina rule provided that the time limitation was "mandatory," and precluded an appeal to the State Supreme Court. The State Supreme Court dismissed petitioners' attempted appeal on the ground that no appeal had been filed. This Court held that under the doctrine of exhaustion of state remedies habeas corpus ought not be granted since petitioners had sought too late to invoke North Carolina's "adequate and easily-complied-with method of appeal." 344 U. S., at 485. In contrast, the petitioner's appeal from his judgment of conviction to the Indiana Supreme Court raising the constitutional claim was timely and was accepted by that court as fully complying with all pertinent procedural requirements. Furthermore, the State Supreme Court did reach and decide petitioner's federal constitutional claim.

We therefore hold that the case is governed by the principle that the doctrine of exhaustion of state remedies embodied in 28 U. S. C. § 2254 does not bar resort to federal habeas corpus if the petitioner has obtained a decision on his constitutional claims from the highest court of the State, even though, as here, that court could have based its decision on another ground. *Wade* v. *Mayo,* 334 U. S. 672. In this view, we do not reach the question whether federal habeas corpus would have been available to the petitioner had the Indiana Supreme Court rested its decision on the escape ground.

The judgment of the Court of Appeals is reversed and the case is remanded to that court. The Court of Appeals

may decide the merits of petitioner's constitutional claim, or remand to the District Court for further consideration of that claim, as the Court of Appeals may determine.

*It is so ordered.*

MR. JUSTICE STEWART concurs in the judgment and the opinion of the Court, with the understanding that the Court does not here depart from the principles announced in *Brown* v. *Allen,* 344 U. S. 443.

MR. JUSTICE FRANKFURTER, dissenting.

The problem represented by this case is as old as the Union and will persist as long as our society remains a constitutional federalism. It concerns the relation of the United States and the courts of the United States to the States and the courts of the States. The federal judiciary has no power to sit in judgment upon a determination of a state court unless it is found that it must rest on disposition of a claim under federal law.* This is so whether a state adjudication comes directly under

---

*The formulation by Mr. Chief Justice Fuller, for the Court, of this jurisdictional *sine qua non* in *California Powder Works* v. *Davis,* 151 U. S. 389, 393, represents the undeviating practice of the Court until today:

"It is axiomatic that, in order to give this court jurisdiction on writ of error to the highest court of a State in which a decision in the suit could be had, it must appear affirmatively not only that a Federal question was presented for decision by the highest court of the State having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided or that the judgment as rendered could not have been given without deciding it. And where the decision complained of rests on an independent ground, not involving a Federal question and broad enough to maintain the judgment, the writ of error will be dismissed by this court without considering any Federal question that may also have been presented."

review in this Court or reaches us by way of the limited scope of habeas corpus jurisdiction originating in a District Court. (Judicial power is not so restrictively distributed in other federalisms comparable to · ours. Neither the Canadian Supreme Court nor the Australian High Court is · restricted to reviewing Dominion and Commonwealth issues respectively. The former reviews decisions of provincial courts turning exclusively on provincial law and the latter may review state decisions resting exclusively on state law.) To such an extent is it beyond our power to review state adjudications turning on state' law that even in the high tide of nationalism following the Civil War, this Court felt compelled to restrict itself· to review of federal questions, in cases coming from state courts, by limiting broadly phrased legislation that seemingly gave this Court power to review all questions, state and federal, in cases jurisdictionally before it. It refused to impute to Congress such a "radical and hazardous change of a policy vital in its essential nature to the independence of the State courts . . . ." *Murdock* v. *Memphis,* ?0 Wall. 590, 630. This decision has not unjustifiably been called one of "the twin pillars" (the other is *Martin* v. *Hunter's Lessee,* 1 Wheat. 304) on which have been built "the main lines of demarcation between the authority of the state legal systems and that of the federal system." Hart, The Relations Between State and Federal Law, 54 Col. L. Rev. 489, 503–504.

Something that thus goes to the very structure of our federal system in its distribution of power between the United States and the States is not a mere bit of red tape to be cut, on the assumption that this Court has general discretion to see justice done. Nor is' it one of those "technical" matters that laymen, with more confidence than understanding of our constitutional system, so often disdain.

In view of so vital a limitation on our jurisdiction, this Court has, until relatively recently, been very strict on insisting on an affirmative showing on the record, when review is here sought, that it clearly appear that the judgment complained of rested on the construction of federal law and was not supportable on a rule of local law beyond our power to question. Particularly in cases where life or liberty is at stake, the Court has relaxed this insistence to the extent of giving state courts an opportunity to clarify a decision that could fairly be said to be obscure or ambiguous in establishing that it rested or could rest on an interpretation of state law. No doubt this procedure makes for delay in ultimate decision. But it ensures that there is no denial of the right to resort to this Court for the vindication of a federal right when a state court's adjudication leaves fair ground for doubt whether a federal right controlled the issue. Experience shows that this procedure for clarification at times establishes that it was, in fact, federal law on which the state decision rested, while in other instances the state court removed all doubt that state law supported its decision, and there was an end of the matter. Compare *Whitney* v. *California,* 274 U. S. 357, and *Herb* v. *Pitcairn,* 324 U. S. 117, 325 U. S. 77, with *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, and *Van Cott* v. *State Tax Comm'n,* 98 Utah 264, 96 P. 2d 740; *Minnesota* v. *National Tea Co.,* 309 U. S. 551, and *National Tea Co.* v. *State,* 208 Minn. 607, 294 N. W. 230; *Williams* v. *Georgia,* 349 U. S. 375, and *Williams* v. *State,* 211 Ga. 763, 88 S. E. 2d 376.

Even the most benign or latitudinarian attitude in reading state court opinions precludes today's decision. It is not questioned that the Indiana Supreme Court discussed two issues, one indisputably a rule of local law and the other a claim under the Fourteenth Amendment. That court discussed the claim under the Fourteenth Amendment rather summarily, after it had dealt

extensively with the problem of local law. If the Indiana court's opinion had stopped with its lengthy discussion of the local law and had not gone on to consider the federal issue, prefacing its consideration with the introductory sentence that "[o]ur decision on the point under examination makes it unnecessary for us to consider the other contentions of the appellant; however, because of the finality of the sentence in the case we have reviewed the evidence to satisfy ourselves that there is no miscarriage of justice in this case . . ." (*Irvin* v. *State,* 236 Ind. 384, 392–393, 139 N. E. 2d 898, 902), it is inconceivable that, on the proceeding before us, we would entertain jurisdiction. What this Court is therefore saying, in effect, is that it interprets the discussion of the Fourteenth Amendment problem which follows the elaborate and potentially conclusive discussion of the state issue not as resting the case on two grounds, state and federal, but as a total abandonment of the state ground, a legal erasing of the seven-page discussion of state law. Concededly, if a state court rests a decision on both an adequate state ground and a federal ground, this Court is without jurisdiction to review the superfluous federal ground. For while state courts are subject to the Supremacy Clause of the United States Constitution (Art. VI, § 2), they are so subject only if that Clause becomes operative, and they need not pass on a federal issue if a relevant rule of state law can dispose of the litigation.

It may be that it is the unwritten practice of the Indiana Supreme Court to have an "unnecessary" consideration of a federal issue wipe out or displace a prior full discussion of a controlling state ground. Maybe so. But it is surely not a self-evident proposition that discussion of a federal claim constitutes abandonment of a prior disposition of a case on a relevant and conclusive state ground. The frequency with which state court opinions indulge in the superfluity of dealing with a federal issue,

after resting a case on a state ground, affords abundant proof that we cannot take judicial notice of an inference that a federal question discussion following a state-ground disposition spells abandonment of the latter. Perhaps if counsel had documented such an Indiana practice, had supplied us with a basis for drawing that conclusion regarding the appropriate way of reading Indiana opinions, this Court itself would be entitled to find that such is the way in which Indiana decisions must be read. But we cannot extemporize the existence of such an Indiana practice as a basis for our jurisdiction. Restricted, as we are restricted, to the text of what the Supreme Court of Indiana wrote in 236 Ind. 384, 139 N. E. 2d 898, in ascertaining what it is that the Indiana Supreme Court meant to do when it first enlarged upon a controlling state ground and then, *ex gratia,* dealt with an "unnecessary" federal ground, we are not free to pluck from the air an undocumented state practice on the strength of which we are to ignore the bulk of the state court's opinion and treat it as though it had not been written or its significance had been discredited by the Indiana Supreme Court.

In the most compassionate mood, all we are entitled to do in a case like this, where life is at stake, is to afford an opportunity for the Indiana Supreme Court to tell us whether, in fact, it abandoned its state ground and rested its decision solely on the "unnecessary" federal ground. Thus only could this Court acquire jurisdiction over the federal question. Such a remission to the Indiana Supreme Court, by an appropriate procedure, for a clarification of its intention in writing this double-barreled opinion would be in full accord with the series of cases in which the state court was given opportunity to clarify its purpose. To assume, as the Court does, that the Indiana Supreme Court threw into the discard an elaborately considered local law rule is, I most respectfully submit, to assume a jurisdiction that we do not have. This assumption of

jurisdiction cannot help but call to mind the admonition of Benjamin R. Curtis, one of the notable members in the Court's history, that "questions of jurisdiction were questions of power as between the United States and the several States." 2 Cliff. 614 (1st Cir.).

With due regard to the limits of our jurisdiction there is only one other mode of reading the opinion of the Indiana Supreme Court, one other mode, that is, by which the meaning of its opinion is to be decided by that court and not this. That is the mode which my brother HARLAN has explicated, and it is entirely consistent with the governing considerations which I have tried to set forth for me also to join, as I do join, his dissenting opinion.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER, MR. JUSTICE CLARK, and MR. JUSTICE WHITTAKER join, dissenting.

Although I agree that federal consideration of petitioner's constitutional claims is not foreclosed by the decision of the Supreme Court of Indiana, I think that the Court's disposition of the matter, which contemplates the overturning of petitioner's conviction without the necessity of further proceedings in the state courts if his constitutional contentions are ultimately federally sustained, rests upon an impermissible interpretation of the opinion of the State Supreme Court (236 Ind. 384, 139 N. E. 2d 898), and that a different procedural course is required if state and federal concerns in this situation are to be kept in proper balance.

It is clear that the federal courts would be without jurisdiction to consider petitioner's constitutional claims on habeas corpus if the Supreme Court of Indiana rejected those claims because, irrespective of their possible merit, they were not presented to it in compliance with the State's "adequate and easily-complied-with

method of appeal." *Brown* v. *Allen,* 344 U. S. 443, 485. The first question that concerns us, therefore, is whether the state court's judgment affirming the conviction rests independently on such a state ground.

At the outset we must keep in mind several aspects of Indiana criminal procedure, and the manner in which petitioner's attorneys presented his appeal to the Indiana Supreme Court, all as noted in this Court's opinion. The procedural aspects are (1) that no appeal lies from an order denying a new trial as such, that kind of an order being reviewable only in connection with an appeal from the final judgment in the case; (2) an escapee, such as this petitioner was, has no standing to make a motion for a new trial, at least if he is at large throughout the period available for the making of such a motion, 236 Ind., at 386–392, 139 N. E. 2d, at 898–902; and (3) an appellant must perfect his appeal by filing assignments of error and a transcript of the record. In the taking of petitioner's appeal from the judgment of conviction the *only* assignment of error filed related to the trial court's denial of the motion for a new trial. While that assignment was supported by a detailed specification of petitioner's constitutional claims, none of such claims was independently filed as an assignment of error.

Had the State Supreme Court declined without more to reach petitioner's constitutional contentions because (1) his motion for a new trial had been forfeited by reason of escape, and (2) such claims had not independently been assigned as error, the federal courts would not, as has been said, be entitled to consider them. The difficulty here is that the state court did not stop at this juncture, but, after pointing out that petitioner had assigned as error only the denial of his motion for a new trial and holding that such denial was not error because of petitioner's escape, went on to consider and find without merit petitioner's constitutional claims.

This Court infers from the fact that the Indiana court considered petitioner's constitutional contentions that its affirmance of his conviction rested entirely on the denial of those claims. It reads the state court's opinion as saying that although that court could under state law properly rest its affirmance of the conviction on petitioner's failure to assign as error anything but the denial of his motion for a new trial, which, as we have seen, was held to have been properly denied under the State's "escapee" rule, it would not do so but would treat petitioner's constitutional claims as if they had themselves been presented as assignments of error, rather than only as grounds supporting the error assigned to the trial court's order denying a new trial. I think this reading of the state court's opinion defies its plain language.

The state court devotes no less than seven pages of its nine-page opinion to an exhaustive discussion of the rule of state law which requires denial of a new trial motion made by an escapee still at large. At the close of this discussion it says:

"The action upon which the appellant predicates error in this appeal is based solely upon the overruling of a motion for a new trial. There is no other error claimed. Since appellant had no standing in court at the time he filed a motion for a new trial the situation is the same as if no motion for a new trial had been filed, or he had voluntarily permitted the time to expire for such filing. His letter reveals he was aware of this right, and had talked with his attorneys about a new trial and an appeal.

"No error could have been committed in overruling the motion for a new trial under the circumstances

"Our decision on the point under examination makes it unnecessary for us to consider the other

contentions of the appellant; however, because of the finality of the sentence in the case we have reviewed the evidence to satisfy ourselves that there is no miscarriage of justice in this case. . . ." 236 Ind., at 392–393, 139 N. E. 2d, at 901–902.

The opinion then reviews the petitioner's constitutional contentions, and concludes with the statement:

"It does not appear from the record and argument had, that the appellant was denied due process of law under the Fourteenth Amendment, or due course of law under the Bill of Rights, or that there was any miscarriage of justice when he was convicted and given the death penalty." 236 Ind., at 394, 139 N. E. 2d; at 902.

This Court's reading of the Indiana opinion makes the exhaustive discussion in that opinion of the status of an escapee under Indiana law entirely unnecessary and meaningless. While I agree with the Court that the Indiana Supreme Court reached a "considered conclusion that the conviction resulting in the death sentence was not obtained in disregard of the protections secured to the petitioner by the Constitution of the United States," it is fully apparent that the state court ultimately rested its judgment of affirmance squarely on the ground that the petitioner's *sole* assignment of error, the denial of his motion for a new trial, was without merit because he was an escapee when that motion was made, and when it was denied. The fact that the Indiana court also reached a conclusion that petitioner's claims of constitutional deprivation were not made out does not entitle us to ignore the fact that it was on a point of state procedure that it ultimately rested.

Nevertheless, I do not think that in the circumstances of this case the State's contention that the federal courts

lack jurisdiction to deal with petitioner's constitutional points can be accepted. The State has conceded that its Supreme Court was empowered in its discretion to disregard the procedural defects in petitioner's appeal. That being so, the state court's constitutional discussion takes on, for me, a vital significance in connection with its procedural holding under state law, namely, that affirmance of petitioner's conviction was rested on this state ground only *after* the Indiana court, displaying a meticulous concern that state procedural requirements should not be allowed to work a "miscarriage of justice," particularly in view of "the finality of the sentence," had satisfied itself that petitioner's constitutional contentions were untenable. Such a reading of the state court's opinion is required to give meaning to its constitutional discussion, for if petitioner's procedural failures inexorably prevented the state appellate court from reaching his constitutional claims their discussion in its opinion would appear to have been wholly pointless. At the same time this view of the opinion deprives Indiana's procedural holding of vitality as a bar to consideration of petitioner's constitutional claims by the federal courts on habeas corpus, for the decision as to those claims was inextricably a part of that holding. I therefore think that the two courts below should have dealt with the merits of petitioner's constitutional points.

However, even were the federal courts ultimately to hold that petitioner was denied due process, it would not be within their province thereupon to order his release. At that point it would unmistakably be the prerogative of the Indiana Supreme Court to decide whether on different postulates of federal constitutional law it would nevertheless hold that under Indiana law petitioner would still be barred from being heard because of his failure to comply with the State's procedural rules. For just as it

is the federal courts' responsibility and duty finally to decide the federal questions presented in this case, it belongs to the Indiana Supreme Court finally to decide the state questions presented in the light of federal decision as to the commands of the Fourteenth Amendment. Hence if petitioner ultimately prevails on his constitutional claims, further proceedings in the state courts will be unavoidable.

In this state of affairs I think our proper course should be to proceed ourselves to a decision of the constitutional issues, rather than remand the case to the Court of Appeals. If the judgment of the Indiana Supreme Court is potentially going to be called into question because of a federal court's conclusion that it is based in part on erroneous constitutional postulates, I believe that Indiana is entitled to have that conclusion authoritatively pronounced by this Court. Moreover, the District Court, and one judge of the Court of Appeals, have already given clear (and conflicting) statements of their views as to the merits of such issues. The questions have been exhaustively briefed and fully argued before us. And this course would avoid further protracted delay.

Were we to conclude that the Indiana Supreme Court was correct in its premise that petitioner's constitutional points are without merit, the judgment of the Court of Appeals dismissing the writ of habeas corpus should of course be affirmed. If, on the other hand, we should decide that petitioner was in fact deprived of due process at trial, I would hold the case and give petitioner a reasonable opportunity to seek, through such avenues as may be open to him, a determination by the Indiana Supreme Court as to whether, in light of such a decision, it would nevertheless hold that petitioner's failure to comply with the State's procedural rules required affirmance of his conviction. Cf. *Patterson* v. *Alabama,* 294 U. S. 600;

*Williams* v. *Georgia,* 349 U. S. 375. Should no such avenues be open to petitioner in Indiana, it would then be time enough to decide what final disposition should be made of this case.

For these reasons I concur in the view that federal consideration of petitioner's constitutional claims is not precluded, and in all other respects dissent from the Court's opinion.