THOMAS, Justice.
The appellee filed its bill for declaratory decree and named Florida Power and Light Company defendant. During the progress of the suit the Attorney General, the State Attorney of the Eleventh Judicial Circuit and Florida Railroad and Public Utilities Commission intervened.
The provisions of the charter defining the general regulatory powers of the city over utilities were outlined and this was followed by a recital of an ordinance, enacted by the city commission and approved by the electors in 1925, granting to Miami Electric Light and Power Company and its successors a franchise to furnish electricity to the inhabitants. The following year the appellant became the successor of Miami Electric Light and Power Company.
In 1951 the Legislature enacted Chapter 26545, F.S.A. § 366.01 et seq., which contained the provision, in Sec. 4, that the Florida Railroad and Public Utilities Commission should have “jurisdiction to regulate and supervise each public utility with respect to its rates,” and so on, and that this “jurisdiction * * * [should] be exclusive and superior to that of all * * * municipalities * * * and in case of conflict therewith all lawful acts, orders, rules and regulations of the Commission [should] in each instance prevail * *
The city charter carried the provision that general laws applying to municipal corporations then in effect or thereafter passed should be applicable where not in conflict with the charter provisions or with ordinances and resolutions adopted by the commission in accordance with charter authority.
The “interconnected system of power generating plants only one of which, used *272 as a ‘stand-by’ generating plant, is located within the limits” of Miami, extends from St. Augustine to Homestead and from Fort Pierce to Fort Myers.
Reverting to the Act, it required the Florida Railroad and Public Utilities Commission to appraise costs of property of utility companies actually used in public service, to keep a record of the investments of the companies, and to use the value fixed for the purpose of establishing rates.
By charter or franchise the appellee was authorized to examine the books of the utility company and to prescribe forms of accounts while the appellant was required to file with the appellee, within certain periods, statements of the rate base and the earned return. In the charter it was stipulated that if a public service commission should be given power to prescribe forms of accounts, they should be controlling “so far as they go” but the city commission could prescribe “more detailed forms for the utilities within its jurisdiction.”
The appellee charged that the legislative Act, insofar as it purported to deprive the city of “the right to regulate rates charged and services furnished by [the appellant-utility company] and to examine [its] books and records”, violated Sec. 10, Article I and the Fifth and Fourteenth Amendments of the Constitution of the United States and Secs. 20 and 21 of Article III and Secs. 12 and 17 of the Declaration of Rights of the Constitution of Florida, F.S. A.
Following the allegations as we have condensed them, the appellee posed twelve questions for decision of the Court, all dealing with the impact of the Act upon the powers vested in the city by its charter and upon the franchise granted under the charter.
The answer of the appellant-Florida Power and Light Company was adopted by the intervenors and then the matter was concluded on motion for summary final decree.
The chancellor held the Act constitutional although it affected the contractual relations of utility company and city, deprived the latter of its power to regulate rates, to fix standards of service, and to demand within a certain time a statement of rate base and earned return; and although it granted the Florida Railroad and Public Utilities Commission exclusive authority to determine the rate base. He specifically held that none of the guarantees secured by the portions of the State and Federal Constitutions, already detailed in analyzing the bill, had been violated.
But he also held that the appellee was authorized to “prescribe more detailed forms of accounts * * * provided that said detailed forms * * * are not in conflict with the uniform system and classification of accounts prescribed by the Florida Railroad and Public Utilities Commission under the authority of Chapter 26545supra, and “to examine and audit the accounts of the [company] * * * within its jurisdiction, provided that said examinations and audits are not in conflict with any lawful act, order, rule, or regulation of the Florida Railroad and Public Utilities Commission, acting under the authority” of that law. Of course, these two exceptions were prompted by Sec. 75(d) of the city charter to which we have already referred and which it now seems well to quote fully:
“‘(d) To prescribe the form of accounts and at any time to examine and audit the accounts and other records of any such utility; but if a public service commission or any other authority shall be given the power by law to prescribe the form of accounts for public utilities throughout the state, the forms so prescribed shall be controlling so far as they go, but the commission may prescribe more detailed forms for the utilities within its jurisdiction.’” (Emphasis supplied.)
It seems to us that there was no occasion to hold both that the authority should be reserved to the city to require more detailed accounts and that the authority of *273 the Florida Railroad and Public Utilities Commission be recognized by the prohibition of any conflict with the forms it prescribed ; nor do we find reason for holding at once that the city could continue audits but that they should be harmonious with regulations of the Florida Railroad and Public Utilities Commission. It will have been seen that in each instance the Act under consideration was mentioned as the source of the power of the Florida Railroad and Public Utilities Commission. For illustration, by Sec. 3(k) of the charter, the city was empowered to establish rates, and by Sec. 75(c) to fix reasonable standards of service. Under the ruling these have been held properly withdrawn by the Act and we do not find that there is sound reason for holding that those powers were superseded while the incidental rights relative to audits and forms were undisturbed. The language italicized does not justify that construction, not to mention the needlessness of reserving to the city the authority to make the audits and prescribe the forms when the powers to which they were incidents have been taken away.
We pause here to remark that in the state of the record we are not obliged to explore the validity of Chapter 26545, supra, which was so vigorously attacked by the bill. Of course the appellants do not complain about any part of the final decree except the reservation to the city of the right to prescribe forms of account and to examine the utility company’s books. On the other hand, the city, though it filed cross assignments of error challenging the chancellor’s decision that the Act was constitutional, has not argued the assignments here.
We have, then, for determination only the correctness of the decree with reference to the forms of accounts and the audits, and we think the matter may be simply resolved in appellants’ favor.
When the legislature placed “exclusive and superior” control in the Commission, no room was left for doubt that if was. intended that that body should supervise, to. the exclusion of appellee, those phases of the utility company’s operations specified in the Act. The advantage that results, from the uniformity of such a system is obvious but we will not elaborate on its wisdom, such being a matter beyond our direct conc.ern though we are not uninfluenced by it.
The parts of the city charter preserved by the chancellor would result in mere duplication of effort on the part of the utility company, if not on the part of the city. The company’s burden could conceivably be multiplied by the number of cities situated in the area it serves. We must disagree with the chancellor’s view that the provisions of Sec. 75(d) of the charter with reference to audits and accounts survived the passage of the Act. To repeat, it is difficult to see what need there would be accomplished by allowing the city to require audits and detailed accounts when the rates and standards of service will be controlled by the Florida Railroad and Public Utilities Commission. Certainly all information gathered by the Commission will be readily accessible to the city.
We, therefore, affirm all the chancellor’s decree with exception of those parts reserving to the city authority to prescribe detailed forms of accounts and to examine and audit accounts, and we direct that the decree be revised accordingly.
Affirmed in part; reversed in part
ROBERTS, C. J., and TERRELL, HOBSON, MATHEWS and DREW, JJ., concur.
SEBRING, J., not participating.