E. HARRIS DREW, Associate Judge.
Appellants own land in Dade County bordering on navigable water. The original conveyance out of the United States described the property as government lots, the southerly boundary of each being shown on the surveys at that time to border on navigable water. In their complaint to quiet title they allege that subsequent to the date of the acquisition of the said land from the United States by their predecessors in title, said lots had increased in size by the gradual imperceptible and natural action of the waters adjacent thereto in depositing soil along the foreshore and that such accretion had materially increased the area of said government lots; the complaint described such accreted lands and it was then alleged that certain defendants, therein named, who owned adjacent government lots claimed a portion of said accreted lands had accreted to their uplands instead of appellants’ and that such claim constituted a cloud, doubt or suspicion upon the title to plaintiffs’ said lands. Many of the defendants who were alleged to claim some right, title or interest in the lands that had allegedly accreted to plaintiffs were residents of Dade County but many were non-residents or their residences were alleged to have been unknown. The Trustees of the Internal Improvement Fund were named defendants as was the Central and Southern Florida Flood Control District. As a basis for naming both *674 bodies defendants the complaint alleged that the Trustees had conveyed an easement over a portion of the accreted lands to the Flood Control District, that such easement was recorded in Dade County and constituted a cloud upon the title to plaintiffs’ lands. Moreover, the complaint alleged that the Trustees, claiming to own plaintiffs’ land, had approved a proposed sale of other parts of said accreted lands to third parties and that a conveyance of said lands would issue unless said Trustees were restrained from so doing. The complaint in other respects was in the usual form of a complaint to quiet title and in addition to the plaintiffs’ prayer that the title to the land be quieted as against the claims of all of said defendants, including the Trustees, it prayed that said Trustees be enjoined from making any conveyance of said accreted lands or otherwise encumbering the same.
The Trustees moved to dismiss the complaint on the ground that the venue was in Leon County and not in Dade County. Mason Lumber Co. v. Lee, 126 Fla. 371, 171 So. 332; Gay v. Ogilvie, Fla.1950, 47 So.2d 525; Gaulden v. Gay, Fla.1950, 47 So.2d 580; McCarty v. Lichtenberg, Fla.1953, 67 So.2d 655; Florida Real Estate Commission v. State ex rel. Bodner, Fla.1954, 75 So.2d 290; Larson v. R. K. Cooper, Inc., Fla.1954, 75 So.2d 757; East Coast Grocery Company v. Collins, Fla.1957, 96 So.2d 793. The motion of the Trustees was granted, the cause was dismissed as to them and the matter is now before us on certiorari for the purpose of determining the correctness of that ruling. The motion of the Trustees deals with said lands as “submerged sovereignty lands” and it is their theory, presented in the motion and argued orally and in the briefs, that plaintiffs have no title to said lands and that, therefore, they the Trustees, “cannot comprehend how the plaintiffs can seek to quiet title to lands when they do not hold title or right thereto.” If this theory be sound their conclusion would be, but the theory is unsound for the reason that, on the motion to dismiss, the allegations of the complaint are taken as true, and the complaint concerns the title to accreted lands alleged to be vested in the plaintiffs. In Mexico Beach Corporation v. St. Joe Paper Co., District Court of Appeal, 1st District, 97 So.2d 708, 710, a case factually quite similar to this one, the able opinion prepared by Judge Wigginton for the Court concluded on overwhelming authority, including numerous decisions of the Supreme Court of Florida, that:
“In the United States, ‘The rule governing additions to land bounded by a river, lake or sea, has been much discussed and variously settled by usage and by positive law. Almost all jurists and legislators, however, both ancient and modern, have agreed that the owner of the land thus bounded is entitled to these additions. By some, the rule has been vindicated on the principles of natural justice, that he who sustains the burden of losses and of repairs, imposed by the contiguity of waters, ought to receive whatever benefits they may bring by accretion; by others, it is derived from the principle of public policy, that it is the interest of the community that all land should have an owner, and most convenient that insensible additions to the shores should follow the title to the shore itself.’ The common-law rule which vests title to soil formed along navigable waters by accretion or reliction in owners of abutting lands is the rule applicable in Florida.”
The Trustees place great reliance upon East Coast Grocery Company v. Collins, supra, and similar cases holding that an injunction suit against the Trustees could not be brought in a county other than Leon (the seat of the Capital) under the guise of a suit to quiet title. This contention, however, is wholly without merit under the allegations of the complaint in this cause. The complaint is not a suit for injunction in the guise of a suit to quiet title but presents a genuine, *675 legitimate and proper case determinable only by the Circuit Court of Dade County in which the lands are located. Moreover, in East Coast Grocery Company v. Collins, supra, had the Supreme Court concluded that that suit was not a subterfuge but one brought in good faith to quiet title, the conclusion there would have been altogether different for in that case the Court said [96 So.2d 795]:
“No deed has been executed constituting a cloud on appellant’s title, or affecting his riparian rights, and if appellant ultimately prevails none will be executed.
"Having this conviction, zve judge the suit to he one that should he instituted in Leon County," (Emphasis supplied.)
And so it may be said that the foregoing case is authority in fact upon which the conclusion may properly be reached that this litigation was correctly brought in Dade County and that the Trustees were lawfully named therein as defendants.
The laws provide that suits to quiet title should be brought in the circuit court of the county in which the land lies. Article V, Section 11, Florida Constitution, F.S.A.; Section 66.41 Florida Statutes 1955, F.S.A. The cases of the Supreme Court requiring the Trustees to be sued in Leon County were never intended, nor can they be construed as preventing a landowner, having a legitimate cause of action, from securing a decree quieting his title against the Trustees.
The reasons for the promulgation of the “state agency venue rule” are stated in many of the numerous cases of the Supreme Court of Florida cited in this opinion. In the case of Gay v. Ogilvie, supra [47 So.2d 526], we find the following detailed discussion of principles involved:
“ * * * there are two types or classes of cases where rules and regulations promulgated by state agencies— and let us now add, where official action taken by state agencies under existing statutes — may be brought into question in suits properly instituted for such purposes. The first is the type or class in which the primary purpose of the litigation is to obtain a judicial interpretation or declaration of a party’s rights, duties or status under such rules and regulations or official action taken, where no unlawful invasion of a lawful right secured to the plaintiff by the Constitution or laws of the jurisdiction is directly threatened in the county where the suit is instituted. The second is the type or class in which the primary purpose is to obtain direct judicial protection from an alleged unlawful invasion of the constitutional rights of the plaintiff within the county where the suit is instituted, because of the enforcement or threatened enforcement by a state agency of a statute, rule or regulation alleged to be unconstitutional as to the plaintiff, and where the validity or invalidity of the statute, rule or regulation sought to be enforced comes into question only secondarily and incidentally to the main issue involved.
“With respect to the first type or class the legislature has the undoubted power to designate the headquarters of such state agency as the venue where suits shall be laid. When the legislature has thus acted the venue for suits of such nature will be in the county directed by such legislative designation; the action of the legislature in this respect amounting to a legislative fixing of the residence of such governmental agency for the purpose of suit. If, after the venue has been thus fixed, a suit involving primarily the interpretation of a statute, rule or regulation of such state agency is instituted in a county other than that designated by the legislature, ‘the state agency affected has full means for requiring such suit to be *676 brought in the county of its headquarters by filing timely objections in the pending cause and claiming the privilege of being sued in the forum designated by the legislature; or the state agency may waive such privilege by contesting the merits, thereby submitting itself to the jurisdiction of the court in which the suit has been instituted. Through either procedure exercised in the manner indicated, the state agency has adequate authority to control the venue of actions brought primarily for the purpose of securing a construction of such (statute) rules and regulations, where the unlawful invasion of the fundamental rights of the plaintiff within the county of suit is not directly involved.’ ”
In the case of Game and Fresh Water Fish Commission v. Williams, 1946, 158 Fla. 369, 28 So.2d 431, the Supreme Court held if suits attacking the validity of rules and regulations (of a state agency) could be brought in any judicial circuit, such suits would result in various and different holdings as to the validity of the rules and regulations. Other cases which expressed the view that “concentration of litigation manifestly makes for uniformity of interpretation of rules and regulations promulgated by such state instrumentalities and prevents conflicting judicial rulings in different jurisdictions” are Smith v. Williams, 160 Fla. 580, 35 So.2d 844, 847; Henderson v. Gay, Fla.1950, 49 So.2d 325; Gay v. Jacksonville Symphony Ass’n, Fla.1951, 53 So.2d 110. In addition the last three cited cases advance the additional and probably the most persuasive reason for instituting suits against state agencies at the situs of their principal place of business: namely, the “Court recognized the soundness of the policy that in order to promote orderly, efficient, and economical government, controversies involving the proper interpretation to be given rules and regulations promulgated by state agencies ought to be concentrated at the seat of government where such state agencies are located, where such rules and regulations are promulgated, and where such suits can be defended at a minimum expenditure of effort and public funds.” Smith v. Williams, supra.
This dismissal of the Trustees from this suit cannot be justified under the rationale of any of the holdings in the foregoing cases. Moreover, the allegation of the complaint that the Trustees had conveyed an easement in the lands claimed to be owned by the plaintiffs is in itself sufficient to bring this case within one of the recognized exceptions to the rule, namely, an “unlawful invasion of a lawful right secured to the plaintiff by the Constitution or laws of the jurisdiction is directly threatened in the county where the suit is instituted.” Gay v. Ogilvie, supra.
Certiorari is granted and the questioned order is quashed with directions to reinstate the Trustees as defendants in said cause and for further proceedings in accordance with the views herein expressed.
CARROLL, CHAS., C. J., and FLOYD, ROBERT L., A. J., concur.