**AAA Enterprises, Inc., et al v. FLORIDA PUBLIC SERVICE COMMISSION.**
No. 78-738 CA.
Circuit Court, Martin County.
November 8, 1978.

A. Ward Wagner, Jr., and John F. Romano of Cone, Owen, Wagner, Nugent, Johnson & McKeown, West Palm Beach, for the plaintiffs.

William E. Sundstrom, Tallahassee, for the defendant.

Robert L. Shevin, Attorney General, intervenor.

**PHILIP G. NOURSE, Circuit Judge.**

*Order denying motion for change of venue, November 8, 1978:*
The plaintiff corporation, Triple "A" Enterprises, Inc., is a "mama/papa" type business operated out of Martin County, with its home office and only office in the city of Stuart. This is a small and sparsely populated rural community. The plaintiff, Frank Lechacz, and his wife, manage the business and are responsible for its daily activities. This case involves a "squabble" between the plaintiffs and the Florida Public Service Commission. The plaintiffs claim to be a labor force involved in the business of performing services and labor as requested by members of the general public. Some of plaintiffs' activities include cleaning rugs, painting, picture hanging, crating, boxing or loading items of personal property for later movement by customers, shippers and other persons unrelated to the plaintiffs, and moving items of personal property and/or household goods.

It is regarding this matter of moving household goods to which the defendant, Florida Public Service Commission, objects and this objection resulted in a dispute between the parties which led to plaintiffs' lawsuit for an injunction and declaratory relief. The defendant Public Service Commission claims the plaintiff corporation is a "motor carrier" within the purview of Chapter 323 of the Florida Statutes. Plaintiffs claim it is not.

Following the filing of plaintiffs' complaint, the defendant filed a motion for change of venue. The defendant bases its motion upon FSA §47.011 which states that "actions shall be brought only in the county . . . where the defendant resides, or where the cause of action accrued . . ." The defendant resides in Leon County, the state capital, and it claims that is where venue lies pursuant to the statute.

Plaintiffs' opposition to the defendant's venue motion is grounded upon the doctrine of waiver, the doctrine of "forum non conveniens" to which the defendant has "factually" stipulated, and the "sword weilder" doctrine. Plaintiffs additionally claim that to force them to Leon County some 400 miles to the north, to litigate a local squabble, is a denial of due process in its limitation on their right to have open access to the courts since a venue change would, of necessity, force them to take a voluntary dismissal of their cause for reasons of time, finances and undue burden — For example, plaintiffs claim to have approximately thirty witnesses from Martin County; plaintiffs would have to leave this mama/papa business behind while in Leon County; plaintiffs would have to seek local counsel in Leon County. This motion does not directly involve the merits of plaintiffs' claims and, therefore, those facts will not be recited herein.

The forefathers of this nation founded our government upon the premise that it would be a government of the people, for the people and by the people. In 1969, the people of the state of Florida added a provision to their state constitution. Section 21 of the Declaration of Rights states that, "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." This section is derived from paragraph 40 of the Magna Carta of 1215 which contained its own "Petition of Right" and "Bill of Rights." The Fourteenth Amendment to the United States Constitution mandates that no state "shall deprive any person of life, liberty or property without due process of law." To permit the state under circumstances such as we have here to compel the plaintiffs to litigate in the state capital may not only deny plaintiffs access to the courts, but equally, it would serve as a deprivation of plaintiffs' property (or cause of action) without due process of law. FSA §47-011 is, therefore, held to be unconstitutional under both the Florida and United States constitutions as a denial of due process and as a further denial of plaintiffs' access to the courts and plaintiffs' right to have justice administered without sale, denial or delay under circumstances as presented herein and similar circumstances. Forcing the plaintiffs in this instance to litigate in Leon County would, of necessity, close the doors on their right of entry into the courts and/or logically result in extreme delay and undue burden, all of which is unnecessary.

Whenever a denial of due process is in issue, two categories come into play — (1) procedural due process, and (2) substantive due process. We are herein dealing with a denial of "substantive due process." Directing it to the present case, this simply means that either the state's law regarding the defendant Public Service Commission's privilege to be sued in Leon County (its legal residence) must be a process which, following the forms of the law, is appropriate to the case and just to the parties to be affected, or it is a denial of due process. See *Redman v. Kyle*, 76 Fla. 79, 80 So. 300 (1918). Substantive due process forbids arbitrary and capricious laws and laws which are irrational on their face. In this case, there is no basis whatsoever to litigate in Tallahassee. Plaintiffs are residents of Martin County; the activities around which the dispute arose are centered in Martin County; the "cause of action" accrued in Martin County; the witnesses, known at this time, are all from Martin County, etc. The only thing in Leon County regarding this matter is the defendant's state's attorneys. And it should be noted that the state of Florida has in excess of 600 attorneys representing it and its various branches and/or departments throughout Florida. This includes state's attorneys in Martin County. The Attorney General has an office in West Palm Beach.

Florida courts have recently decided several cases dealing with a plaintiff's denial of due process when its access to the courts has been cut off or hampered due to legislation. In *Kluger v. Wright*, 281 So. 2d 1 (Fla. 1973), the court held that it was a denial of due process of law under Article I, Section 21 of the Florida Constitution to deny a plaintiff access to the courts by preventing him statutorily from bringing a damage suit arising out of an automobile accident, just because the property damage did not exceed a specified threshold amount. In reaching its decision, the court found this provision violated Article I, Section 21 of the Florida Constitution. When the state enacts a law which abolishes a plaintiff's right of entry into the courts, it must provide a reasonable alternative. or else the statute denies due process and will be declared unconstitutional. See also *Lasky v. State Farm*, 296 So. 2d 9 (Fla. 1974).

The venue statute herein gives the defendant the privilege of being sued in Leon County, but has provided no reasonable and just alternative in cases such as this one. Either these plaintiffs would have to move their "sword weilding shield" to Leon County or a discontinuance of the case would be necessitated. If this were the case and a law permitting this were permitted to stand, then we should hardly perceive of our system of government truly being one of the people, by the people and for the people. See *Sunspan Engineering and Construction Co. v. Spring-Lock Scaffolding Corp.*, 310 So. 2d 4 (Fla. 1975); *Power Manufacturing Co. v. Saunders*, 47 S. Ct. 678 (1972); *Carter v. Sparkman*, 335 So. 2d 802 (Fla. 1976); Saylor v. Hall, 497 S.W. 2d 218 (Ky. App. 1973).

The "defendant's residence" portion of FSA §47.011 is based upon the premise that protection against annoyance, burden and expense should be extended to a defendant from having to defend or litigate out of the defendant's county of residence. In accordance with this premise, it would be preposterous to send this case or cases like it to the state capital, some 400 miles to the north. Assuming the defendant Public Service Commission's official residence were in Pensacola and this suit had been filed in Key West under similar circumstances, would it be reasonable or just to transfer venue to Pensacola? Certainly not. Even in 1775, our forefathers despised the burden, expense and injustice of being forced to London for a determination of their rights. See *Gulf Oil Corp. v. Gilbert*, 67 S. Ct. 839 (1947); *In the Matter of the Florida Bar Re: Amendment to Code of Professional Responsibility*, Case No. 48,384 — July 14, 1977. Logic demands that this case remain in Martin County.

FSA §47.011 as it applies to this particular case, is not rational or reasonable and is based upon an arbitrary and capricious form

of theorizing. If this type of situation had been properly and adequately foreseen by our legislators, then perhaps a "reasonable alternative" would have been provided. Since it was not, we have a most definitive denial of "substantive due process." ". . . Our Supreme Court and our District Courts have upheld that access to our courts is the paramount factor which outweighs all others in balancing our scales of justice." *Gaymon v. Quinn Manhaden Fisheries of Texas, Inc.*, 108 So. 2d 643 (Fla. 1st DCA 1959). The effect of the guaranty of due process of law is to protect one's rights "in the broadest sense of the term." 16 Am. Jur. 2d, *Constitutional Law*, §544. And in determining whether the requirement has been observed, regard must be had to substance rather than to form. *Ibid.* Hence, what is or is not a denial of due process of law depends upon the circumstances varying with the subject matter and the necessities of the situation. *Moyer v. Peabody*, 212 U. S. 78, 53 L. Ed. 410, 29 S. Ct. 235 (1909).

A deprivation of access to the courts or an unreasonable hindrance of that right is constitutionally supportable only if the conduct from which the deprivation flows is proscribed by properly enacted legislation which is "reasonably applied." 16 Am. Jur. 2d, *Constitutional Law*, §550. If the right to your "day in court" is to be denied primarily on the basis of time, distance and money, as in the present case, then substantive due process is lacking. It is said that "in substantive law, due process may be characterized as a standard of reasonableness" and/or fair play. *Ibid.* There is nothing reasonable in this case if plaintiffs are compelled to go to Leon County, thereby slamming the courtroom doors in their faces.

It is well settled law that constitutions are to be liberally construed and that a practical construction of a constitution is to be followed in order that effect may be given the purpose of its provisions. 16 Am. Jur. 2d, *Constitutional Law*, §62-65. In construing the meaning and effect of constitutional provisions as they apply to statutes such as in this instance, we are obligated to ascertain and effectuate the intent of the framers and the people. *Gallant v. Stephens*, 358 So. 2d 536 (Fla. 1978); *The Florida Bar v. Lewis*, 35 So. 2d 897 (Fla. 1st DCA 1978). We are herein concerned primarily with determining the constitutionality of FSA §47.011, a state statute. It is a well settled principle of the American system of constitutional law that the courts have inherent authority to determine whether statutes enacted by the legislature transcend the limits imposed by the federal and state constitutions and to determine whether such laws are or are not constitutional. It is their duty to do so. 16 Am. Jur. 2d, *Constitutional Law* §101; *Smyth v. Ames*, 169 U. S. 466, 42 L. Ed. 819, 18 S. Ct. 418 (1898); *Irvin v. Dawd*, 359 U. S. 394, 3 L. Ed. 2d 900, 79 S. Ct. 825 (1959).

Although courts should avoid passing upon the constitutionality of statutes unless necessary, we have here a fundamental right about to be abridged if plaintiffs are sent to Leon County. Therefore, it is necessary that this statute be declared unconstitutional, even though such declarations should be avoided.

Florida courts have carved out certain judicial exceptions to the venue statute via the process of "judicial legislation" in cases involving suits brought by state citizens against the state of Florida. For example, the "sword weilder" doctrine within which the plaintiffs herein fall notes that in cases where the state is the initial sword weilder and the plaintiff files its suit to act as a shield against the state's activities, then venue will remain in the original locale. *Department of Revenue v. First Federal Savings and Loan Association of Fort Myers*, 256 So. 2d 524 (Fla. 2d DCA 1971); *State v. Barns*, 99 Fla. 1258, 128 So. 860 (1930); *State v. Alkinson*, 136 Fla. 528, 188 So. 834 (1938); *C. F. Williams v. Ferrentino*, 199 So. 2d 504 (Fla. 2d DCA 1967); *Paxson v. Collins*, 100 So. 2d 672 (Fla. 3d DCA 1958); *Department of Revenue v. Arvida Corp.*, 315 So. 2d 235 (Fla. 2d DCA 1975); *Department of Transportation v. Morehouse*, 350 So. 2d 529 (Fla. 3d DCA 1977). Another judicial exception is in cases where the state has waived its venue privilege. *Mason Lumber Co. v. Lee*, 170 So. 332 (Fla. 1936); *Gaulder v. Gay*, 47 So. 2d 580 (Fla. 1950). And still another exception is in cases where there has been an attempt to seize and to sell property to satisfy a disputed tax in the county where suit is brought. *Gay v. Jacksonville Symphony Association*, 53 So. 2d 110 (Fla. 1951); *Green v. Bob Lourie Films, Inc.*, 113 So. 2d 431 (Fla. 3d DCA 1961). And as to the doctrine of "forum non conveniens," this defendant has stipulated that Leon County is an inconvenient forum which will cause burden and hardship to plaintiffs. It is time to stop judicially legislating with this venue statute and put a halt to carving out exceptions. Its inherent injustice and due process denial is clear and outright in this particular case or cases similar in nature and/or circumstances.

In 1972, the United States Supreme Court declared the Florida Replevin Statute, FSA §78.01, et seq., unconstitutional as a denial of ("procedural") due process because the prejudgment replevin statute worked a deprivation of property without procedural due process of law insofar as it denied the right to prior opportunity to be heard before chattels were taken from their possessor. *Fuentes v. Shevin*, 407 U. S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). This was followed in 1976 with a holding that Florida's attachment statute, FSA §76.01, et. seq., was constitutionally deficient in that it did not require that the judge issue the writ, it did not require a supporting affidavit when the debt is alleged to be due, in that the

writ, in such an instance, might issue on a conclusory allegation by the creditor that he believed in the existence of one of the grounds for attachment, and the statute did not require an immediate post-seizure hearing. *Unique Caterers, Inc. v. Rudy's Farm Co.*, 338 So. 2d 1067 (Fla. 1976). And, along similar lines of reasoning, the Florida garnishment statute, FSA §77.01, et seq., was declared unconstitutional. *Ray Lein Construction, Inc. v. Wainwright*, 346 So. 2d 1029 (1977). All of these cases pertained to due process violations and all concerned the violation of fundamental rights of citizens (as litigants). These cases reflect the clear attitude of our courts in situations where "fundamental fairness" comes into question.

It is important to note that FSA §47.011 gives the state its privilege of being sued in Leon County through the statute's "defendant's residence'" provision. The actual "right of the state to be sued in Leon County" has developed through the common law in various interpretations of the Florida venue statute. It is this law as it is applied through the subject statute which violates plaintiffs' due process rights under both the state and federal constitutions. The time has arrived for the legislature to "rethink" F.S. 47.011 in order that our government be one "of the people, by the people and for the people."

In view of the foregoing, the defendant's motion for change of venue is denied.

P.S.     "So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the constitution, disregarding the law; the court must determine which of these *conflicting* rules governs the case. This is the *very essence* of judicial duty." *Marbury v. Madison*, I Cranch 137, 178 (1803).

This is twenty years after the adoption of the United States Constitution and ten years after adoption of the Bill of Rights. As to complying with the intentions of our forefathers, see *Stephens v. Gallant*, Supreme Court of Fla., 358 So. 2d 536 (1978).

*Order granting motion for reconsideration and/or clarification, February 8, 1979:* This cause having come on to be heard upon the defendant's motion for reconsideration and/or clarification, and the court having heard argument of counsel on December 11, 1978, and plaintiff, pursuant to the court's request having filed an additional brief on the following points of law, to-wit —

*A. In construing constitutional provisions, are words to be given their ordinary, plain and simple meaning? (Is the word "delay" as used in Article XXI of the Declaration of Rights to the Florida Constitution to be given its ordinary meaning which is to slow down, to hinder, to procrastinate or linger and/or to hold back?)*

*B. Can the court raise the issue of constitutionality on its own initiative?*

The court finds as follows, to-wit —

*Issue No. I*

Reviewing the historical background of Section 21 of the Declaration of Rights, it states as follows —

"The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or *delay."* (Emphasis supplied.)

This court agrees with defendant's counsel that the history of that provision is not exactly the same as this court's previous interpretation thereof. (A copy of which is attached hereto and by reference made a part hereof.) Stated in a different way, those words as defined in the Magna Carta about 1200 A. D. had a different meaning from that which this court assumed in its original order. The question thus formed is whether or not this court should adopt an 800 year old precedent or apply a modern interpretation to those words. This court elects to do the latter.

Words appearing in the constitution are presumed to have been used according to their natural and popular meaning in which the words are normally understood by the people who have adopted them. Hence, the words in a constitution should be construed in their plain, ordinary and commonly accepted meaning unless it is absolutely certain that the language employed was not intended in its natural signification. *Jacksonville v. Glidden Company,* 169 So. 2d 216 (Fla. 1936); *Wilson v. Crews,* 34 So. 2d 114 (Fla. 1948); 6 Fla. Jur., *Constitutional Law* §26 (as updated 1978); 16 Am. Jur. 2d, *Constitutional Law* §58, 63, 65, "Thus, it is universally recognized and the incontrovertibly established rule of construction that it is presumed that words appearing in a constitution have been used according to their plain, natural and usual signification and import, and not in a sense unreasonably restricted or enlarged." 16 Am. Jur. 2d, Constitutional Law §75; *Ervin v. Collins,* 85 So. 2d 852 (Fla. 1956); *United States v. Sprague,* 282 U. S. 716, 75 Lawyers Edition 640, 51 S. Ct. 220, 71 ALR 1381 (1931).

The American Heritage Dictionary, New College Edition, 1976 Edition, defines the word "delay" as meaning "to postpone until a later time; to defer; to cause to be late or detained; to hinder; to procrastinate; to tarry; to linger; the condition of being delayed." This particular meaning is to be attached to the word "delay" as its ordinary and plain meaning as used in Article I, §21 of the Florida Constitution where it is stated that, "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Stated more simply — when a voter stood in the voting booth on election day in 1967 and voted for the present constitution, almost all voters were using today's meaning for the word "delay" and not the meaning of 800 years ago. Draftsmen of the constitutional provisions are bound by the common ordinary meaning of the words used at the time when the words are presented to the public for ratification. It is most assuredly obvious that a change of venue in this case to Leon County would cause, among other things, "delay" and this is not in accordance with the Florida Constitution and is clearly improper and, thus, unconstitutional, for this and other reasons.

## Issue No. II

Assuming (but not conceding) the fact that the plaintiff did not raise the question of constitutionality of the venue statute involved either in the pleadings or oral argument, this court is then confronted with the technicality of whether or not the issue of constitutionality could be raised on the court's own motion. Since the formation of our country over two hundred years ago, most courts, most of the time, prefer not to decide any more questions than are absolutely necessary. There is good argument for this, particularly until World War I. However, since World War I our society has become overwhelmed and stifled with too much government. Rules, regulations, and taxation are destroying the initiative, self-reliance, and pride handed down by the fathers and grandfathers referred to in "America." Citizens are now walking the streets who think the "world owes them a living" or that "the government will take care of them from the cradle to the grave." No way - no way!! The point to all of this is that if the courts voluntarily went out of the way to set aside unconstitutional laws, six inches of the Florida statute books would probably be reduced to four inches (according to one professor of constitutional law).

When a judge is invested into the duties and powers inherent in a judgeship in the circuit courts, or any other court for that matter, of the state of Florida, he *swears to uphold* (not ignore) the constitution of the United States of America and the constitution of the state of Florida. He takes an oath to this effect knowing that the

constitution is superior and takes precedence over other forms of law, be they statutory enactments, ordinances, governmental department regulations, previously decided case law or common law, etc. When a law comes to the attention of a judge and it is relatively clear to him that the law is in conflict with constitutional provisions, he has an absolute duty via his discretion to strike down that law. This is what is known as judicial responsibility. See *Local 234, U.A.J.A. v. Henley and Beckwith, Inc.*, 66 So. 2d 818 (Fla. 1953); *State ex rel. Davis v. Largo*, 149 So. 2d 420 (Fla. 1933); *Miami Beach v. Lachman*, 71 So. 2d 148 (Fla. 1953). Where there is an imperative and unavoidable necessity to enforce or protect certain constitutional rights, the court must declare the law unconstitutional. *State ex rel. Crim v. Juvenal*, 159 So. 2d 663 (Fla. — 1935), and where a decision on a particular point becomes necessary in order to dispose of the case before it, such as in the case at hand, the court then has a duty to decide the issue of constitutionality. *Florida Power & Light Company v. Miami*, 72 So. 2d 270 (Fla. 1954); State ex rel. *McMullen v. Johnson*, 135 So. 816 (Fla. 1931). As a general rule, a court should not gratuitously bring up an issue of constitutionality if it is unnecessary. *Mott v. Cochran*, 117 So. 2d 408 (Fla. 1960); *Finch v. Fitzpatrick*, 254 So. 2d 203 (Fla. 1971). Nonetheless, state courts, as well as federal courts, are under an *obligation* to guard and enforce every right secured by the constitution and it is the duty of the state courts, as much as of the federal courts, when the question of the validity of a law is necessarily involved as being a violation of a provision of the constitution, to decide that question and to hold the law void if it violates the constitution. *Irvin v. Dowd*, 359 U.S. 394, 3 Lawyers Edition 2d 900, 79 S. Ct. 825; *Thomas v. Collins*, 323 U.S. 516, 89 Lawyers Edition 430, 65 S. Ct. 315; *Smyth v. Ames*, 169 U.S. 466, 42 Lawyers Edition 819, 18 S. Ct. 418; 16 Am. Jur. 2d, *Constitutional Law* §106. There is no valid reason why a court which has jurisdiction over a constitutional question should refuse to decide the question merely because of discretion. *Union Interchange, Inc. v. Allen*, 140 Mont. 227, 370 P.2d 492. The duty to determine constitutionality rests as much upon courts of the first instance as on appellate courts. 16 Am. Jur. 2d, *Constitutional Law* §110. See also *Mountain States Telephone & Telegraph Company v. Animas Mosquito Control District of Colorado*, 380 P.2d 560. In this case a determination as to the constitutionality of a law is imperatively required.

(In addition, the issue of constitutionality as to this particular law of venue was raised by the plaintiff in its brief dated October 23, 1978, and, therefore, is considered to have been raised by the plaintiff as of that time.) Therefore, in summary, it is ordered, adjudged and decreed —

1. This court's order dated November 8, 1978 wherein this court denied the defendant's motion for change of venue is to remain in full force and effect. This case is to be litigated in Martin County where venue properly lies.

2. The defendant's motion for reconsideration is hereby granted in that the court has reconsidered its order of November 8, 1978 and has determined that said order shall remain in full force and effect.

3. The defendant's motion for clarification is hereby granted and the court thus clarifies the order of November 8, 1978 denying the defendant's motion for change of venue as follows —

A. Florida Statute 47.011 as interpreted to give the state of Florida the privilege of having cases filed against it litigated and heard in Leon County is unconstitutional as a denial of the due process clause of the Fourteenth Amendment to the United States Constitution and §21 of the Declaration of Rights of the Florida Constitution.

B. That body of law which has evolved in the state courts of Florida granting the privilege and/ or right to the state of Florida to have suits brought against the state of Florida litigated and heard in Leon County is unconstitutional as a violation of the due process clause of the Fourteenth Amendment to the United States Constitution and as a violation of Article I, §21 of the Florida Constitution.

C. The court is declaring the above statute and body of law unconstitutional as it applies to the facts and circumstances of this particular case as well as to similarly situated plaintiffs.